Wilbur G. Johnson, as executor of the estate of Margaret F. Johnson, commenced this wrongful death action in the Circuit Court of Mobile County, under § 6-5-410, Code of Alabama
(1975), for the death of his 75-year-old wife in a steam room on the premises of Olympia Spa in Dothan, Alabama. Mr. Johnson filed this action against Olympia Spa, David Polur, Brenda McCall, and Honeywell, Inc., on November 13, 1984. Jack Nicklaus Club Management, Inc., was later added as a party defendant.
The complaint contained three causes of action. The first charged the defendants with negligent failure to maintain the steam room; failure to properly supervise the steam room; failure to monitor persons entering the steam room; failure to maintain the thermostats in the steam room; failure to warn persons entering the steam room of danger; and failure to monitor the temperatures of the steam room. The second tracked the allegations of the first cause of action and changed the theory of recovery from negligence to wanton misconduct. The third applied only to defendant Honeywell, Inc., and was brought under the Alabama Extended Manufacturer's Liability Doctrine. The defendants raised the defenses of contributory negligence and assumption of risk.
The motion of defendants Olympia Spa, David Polur, and Brenda McCall for a directed verdict filed at the close of plaintiff's evidence was granted as to Count Two (wanton misconduct), but denied as to Count One. The jury returned a verdict in favor of the plaintiff, and against defendants Olympia Spa, David Polur, and Brenda *Page 82 
McCall for the sum of $3 million. The jury ruled in favor of defendants Jack Nicklaus Club Management, Inc., and Honeywell, Inc.
Olympia Spa, Polur, and McCall filed motions for judgment notwithstanding the verdict, or, in the alternative, for a new trial or for a remittitur. These motions were denied, and they appealed.
Mr. and Mrs. Johnson joined the Olympia Spa in Dothan in February 1984. Mrs. Johnson sought therapy in the mineral pool for her arthritis and because she had had knee surgery. The Johnsons were regulars at the spa, usually visiting there two or three times a week and following a customary routine of bathing in the mineral pool.
On August 22, 1984, the Johnsons and their son Frank arrived at the spa around 5:30 p.m. They went into the mineral pool and stayed as long as ten minutes. They then separated. Mr. Johnson and Frank left the men's dressing room to wait for Mrs. Johnson. After 10 or 15 minutes Frank Johnson asked the young woman on duty to check on Mrs. Johnson. On the first check of the steam room the thickness of the steam prevented her seeing inside it. On the second check, she discovered Mrs. Johnson in the steam room lying on the floor with her arm under her head. Her skin was red and starting to peel off the upper portion of her body. One piece that peeled off of the top of her hand still had her fingernails on it. She was trembling and mumbling. The paramedics were called. She died.
An autopsy was performed on Mrs. Johnson by Dr. Gary Dean Cumberland, a forensic pathologist. He noted thermal (burn) injuries to her head and face area as well as to her chest and upper arm region. There were second and third degree burns over 30% of her body. Dr. Cumberland determined that she died because of these burns and the effect of heat upon her body. Mrs. Johnson tested negative for alcohol and drugs.
Dr. Cumberland found a bruise on the back side of Mrs. Johnson's head, which, he said, was consistent with a fall to the rear, and a bruise on the front part of her left knee, which, he said, was consistent with a fall forward, but he was unable to say whether the bruises were obtained before or after the burn injuries occurred. He said her death was caused by the burns she received from excessive steam, although her exact location in the steam room when she was burned is unknown.
The testimony established that human skin begins to burn when exposed to a temperature of 120° Fahrenheit. This is the lower level of safety. In order to sustain a third degree burn, human skin would have to be exposed to 130° Fahrenheit for a period of two minutes. At a temperature of 150° Fahrenheit, human skin will burn within a second or two. The spa supervisor testified that she had not had any complaints from "experienced users" of the steam room that it was too hot. However, a former employee testified that he had received complaints about excessive heat in the steam rooms and had reported this to the maintenance department. An expert for Honeywell testified that tests revealed that the two thermometers used in the steam room were out of calibration. One was 25° off and the other was 40° off. These were the thermostats that were placed in the steam room to keep it at 110° Fahrenheit.
Mrs. Johnson had previously had problems with vertigo. She had visited her doctor one week before her death for a regular check-up. She was not at that time experiencing difficulty with vertigo, and her doctor testified that she was doing "remarkably well." He told her that there was no need for her to return for six months.
Defendants contend that her burns were the result of a fall. However, even if she did fall directly in front of the steam vent, the testimony was that she could not have burned to death if the temperature had been maintained below 120° Fahrenheit. Defendants further contend that she was warned by Brenda McCall, an employee of the Spa, not to go into the steam room. Ms. McCall was sure there could have been other visitors to the spa that she warned *Page 83 
about the steam room, but she was unable to identify any by name.
The appellants raise five issues for review.
 I.
The first issue is whether the trial court erred in admitting into evidence five photographs of the upper portion of the burned body of Mrs. Johnson. The appellants charge that these are "gruesome photographs" and that the prejudicial effect of the photographs far outweighed any probative value. The appellees point out that this is a wrongful death case and argue that the photographs were properly admitted because they depict the location and severity of the death-causing injuries.
The general rule for the admission of photographs is as follows:
 "A photograph is relevant and admissible in order to explain and apply the evidence when it helps the jury to better understand the persons, objects, locale or conditions which are in issue." Maffett v. Roberts, 388 So.2d 972 (Ala. 1980), citing Moon v. Nolen, 294 Ala. 454, 318 So.2d 690, 693 (1975).
However, it remains within the sound discretion of the trial court to rule as to a particular photograph. The trial judge is vested with discretion not only in his determination as to the preliminary proofs offered to identify the photograph or to prove that the photograph is an accurate representation of the objects it purports to portray, but also in his determination of whether the picture will aid the jury or tend to confuse or prejudice it. Moon v. Nolen, supra. The discretion of the trial court is not reversible in the absence of an abuse of that discretion. Godwin v. Jerkins, 282 Ala. 11, 208 So.2d 210
(1968); Moon v. Nolen, supra; Maffett v. Roberts, supra.; C. Gamble, McElroy's Alabama Evidence, § 123.01(1), (4) (3d ed. 1977).
We have examined the record and the photographs. We find no abuse of discretion by the trial court in admitting the photographs.
 II.
The defendants next claim that the design of the steam room was allowed to be injected into the trial and that the judge refused to give a needed curative charge. Plaintiff claimed negligent maintenance in his complaint. Defendants argue that plaintiff attempted to prove design defect at trial, thus creating a variance between pleading and proof. Defendants rely upon two New York cases, Bradley v. State, 132 A.D.2d 816,517 N.Y.S.2d 818 (1987), and Hugelmaier v. Town of Sweden,130 A.D.2d 962, 516 N.Y.S.2d 378 (1987), as standing for the proposition that proof of defective design in a case where the plaintiff claims negligent maintenance alone creates a material variance between pleading and proof and thus can constitute reversible error.
An examination of the record reflects that this did not happen in this case. The plaintiff did not attempt to prove negligent design, and the judge was vigilant in keeping the issue of design out of the case. During the testimony of Dr. Cumberland, the forensic pathologist, he was asked numerous questions regarding the cause and manner of Mrs. Johnson's death. The following question was asked during direct examination:
"Q. All right, sir.
 "If you vent the steam, and it does exceed a hundred and twenty degrees, if you vent it at the top of the room, instead of the bottom of the room then there's no way anybody on the floor, if it's maintained at a hundred and ten degrees is going to be burned; is there?"
Defendants objected to this question, claiming it raised the issue of design, which was not indicated by the pleadings. Lengthy argument of counsel followed outside the presence of the jury. Counsel for plaintiff explained his question as follows:
 "MR. CUNNINGHAM: And we would state for the record, we've not asked the doctor about whether somebody should or should not move the vent, but the question was if the steam were vented at the top instead of where it was vented then, could you still be burned. *Page 84 
 "Now they are using, as a defense, both of them, the proposition, well, she fell in front of the vent and that's where she got the burn, so everything's okay. Now, to let them use that as a defense, and to —
 "THE COURT: Then I think that question would be proper, if that be the defense that the Defendants are using. I think the doctor can answer that question.
". . . .
 "THE COURT: I will allow the witness to answer that last question, but again, we're not going into the issue of design. And I don't consider that last question as raising that issue."
The witness was allowed to answer the question, but his answer was that he had no opinion.
Defendants then cross-examined Dr. Cumberland at length. During redirect examination, plaintiff's counsel questioned Dr. Cumberland as follows:
"Q. All right, sir.
 "Now, let's assume that this possibility that we discussed at great length here is the way it happened; and that is that Mrs. Johnson fell, coming in the door, and fell in front of the vent, and that certainly could be what happened, could it not?
"A. Yes.
"Q. All right, sir.
 "That could never happen, could it, if the steam coming out of that vent were a hundred and twenty degrees or below?
"A. (No audible response.)
"Q. Or below?
 "A. Oh, or below, no, at that level, it would have taken probably hours for the temperature to have caused any significant injury to a human — her body placed in front of the —
"Q. All right, sir.
 "And if in fact that is the way it happened, that could never have happened if the steam were vented out of the top of the room, could it?
"A. Based on that scenario, no it couldn't."
There was no objection from counsel for defendants to this question.
During closing arguments the judge sustained an objection to any argument concerning design, and he told the jury: "The issue of design is not an issue in this case. . . ." (R.T. 1419.)
Defendants requested that the following charge be given to the jury:
 "I charge you, members of the jury, that there is no claim made by the plaintiff that there was any negligence with respect to the design of the steam room in question. Particularly, there is no claim by the plaintiff that there was any negligence in the design of this steam room with respect to the location of the steam vent which allowed steam into the room. Since plaintiff had made no claim of negligent design, you may not base a verdict for the plaintiff upon any thought you may have regarding the design of this steam room or the placement of the vent." Defendants requested charge no. 32. (R.T. 208.)
The judge refused to give this charge. He explained his actions, outside of the hearing of the jury, as follows:
 "THE COURT: I do not plan to give 32, as I said from the very beginning, I'm not going to give No. 32.
 "The issue of design of the steam room, I do not think is of issue in this case, nor has it been raised by the pleading, nor by the evidence. The — You can say, and I allowed you to say that if she was not in front of the steam vent, she would not — No, that's wrong. I don't want to misquote the evidence. You can argue that they failed to maintain the steam room all you want to. That is the issue in this case, and the manner in which they failed to maintain the steam room, but if we get to restructuring the steam room, then we go into the issue of design." (R.T. 1394-95.)
The judge then charged the jury. His charge was silent as to design. The defendants then renewed their objection to the failure of the judge to give their proposed jury instruction no. 32. The trial judge explained his decision again: *Page 85 
 "THE COURT: Gentlemen, your exceptions to the Court's Charge have so been noted for the record. I think that the totality of the Charge is correct and to bring the Jury back for one particular aspect of a Charge would give undue emphasis to that particular aspect." (R.T. 1507.)
The record does not reflect error on the part of the trial court.
 III.
We next address the question of whether the trial court erred in allowing counsel for the plaintiff to comment on the failure of the defendants to call Dan Haas, the maintenance man at Olympia Spa, as a witness. During closing arguments, counsel for the plaintiff said:
 "Where's Mr. Haas? The maintenance man. They had a duty to show you."
Counsel for defendants objected to this argument, and their objection was overruled. Defendants also moved for a mistrial.
The general rule is that a party cannot comment in argument upon the failure of his opponent to call a particular witness if the witness is equally accessible to both parties.Donaldson v. Buck, 333 So.2d 786, 787 (Ala. 1976); C. Gamble,McElroy's Alabama Evidence, § 191.01(1) (3d ed. 1977). However, we have said that this is not an "automatic rule." Black BeltWood Co. v. Sessions, 514 So.2d 1249 (Ala. 1986). The trial judge must weigh the question of the "equal availability" of the witness in overruling or sustaining the objection.
One of the factors that a trial judge can consider is whether the witness is amenable to service of process; however, this is not the sole criterion. Donaldson v. Buck, supra, at 788. Another factor to consider is whether the witness has some reason to favor one party over another. In the instant case, the plaintiff argues that the testimony was not equally accessible, because, he says, the maintenance man had a natural bias and predilection for the defendants. Defendants argue that the witness was subpoenaed by the plaintiff and that as a former employee of the spa, he would have no bias towards it. The trial court is in the best position to make a determination regarding possible bias and weigh the claims of equal availability. Drs. Lane, Bryant, Eubanks Dulaney v. Otts,412 So.2d 254 (Ala. 1982); Harrison v. Woodley Square Apartments,421 So.2d 101 (Ala. 1982).
Plaintiff's case was based upon the alleged negligence of the defendants, specifically in the maintenance of the health spa. Therefore, the actions of Dan Haas as the maintenance man would be called into question upon the witness stand, as he had peculiar knowledge as to the maintenance of the spa. It is logical to conclude that he would have defended his actions regarding the spa's maintenance if he had been called to the witness stand. The trial judge could have concluded that he would not be a witness who was "equally accessible," within the meaning of the rule, and that he would have had a predisposition to defend his own actions and to be biased toward the defendants.
Further, we have said as to closing arguments:
 "Closing arguments may encompass two separate and distinct areas. First, argument may rest upon facts in evidence. Second, arguments may extend to inferences arising from those facts in evidence. . . . Whether the closing argument exceeds these limits is determined by the trial court in its discretion. Because of the nature of closing arguments, 'much must be left to the enlightened judgment of the trial court, with presumptions in favor of its rulings.' . . . 'Substantial injury' must occur before a trial court's rulings will be reversed."
Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 325 (Ala. 1987) (citations omitted).
We find no error by the trial court.
 IV.
Defendants next raise certain constitutional questions concerning the Alabama Wrongful Death Act (Code of Alabama, §6-5-410). Specifically, they now claim *Page 86 
that the jury's authority to award punitive damages and the non-apportionment of damages among defendants constitute a denial of due process of law as guaranteed by theFourteenth Amendment to the United States Constitution and the Alabama Constitution of 1901. Further, they now argue that theEighth Amendment's "excessive fines" clause serves to limit awards of punitive damages in state civil cases. They claim the jury's award of $3 million is an excessive fine and therefore violates the Eighth Amendment. The defendants' objection was not raised until after the judge's oral charge to the jury, which included a lengthy charge as to punitive damages. Prior to giving this charge, the judge had recessed the trial and conducted a charge conference with the parties and their attorneys. During this charge conference, the defendants made no objections to the jury's being charged as to punitive damages or to the guidelines the jury was being given to follow in assessing punitive damages. When the trial reconvened the next morning, the defendants still did not raise constitutional issues. Defendants made no mention of their constitutional claims until after the judge had charged the jury. They then stated:
 "Simply in the event it's necessary for a higher Court later on, there's an awful lot of discussion going on about punitive damages being unconstitutional under State and Federal constitutional sections now and there being no real standards. And that was discussed in Aetna and Lavoie [apparently a reference to Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050 (Ala. 1987),] that went up to the [United States] Supreme Court and came back down. Simply in the event that we may look at that later on, we would object to punitive damages [as] being unconstitutional in the current state of Alabama law." (R.T. 1496-97.)
This general statement did not produce any ruling by the trial court, so there is nothing to review here.
The first real effort by the defendants to raise any constitutional issues was made in their motion for JNOV or for a new trial, or, in the alternative, for remittitur. It is settled that constitutional issues must be raised before the trial court in order to be preserved for review upon appeal.Marion v. Hall, 429 So.2d 937 (Ala. 1983); Talley v. A MConstruction Co., 284 Ala. 371, 373, 225 So.2d 359, 360 (1969), cert. denied, 397 U.S. 995, 90 S.Ct. 1133, 25 L.Ed.2d 402
(1970); Hicks v. Huggins, 405 So.2d 1324 (Ala.Civ.App.), cert. denied, 405 So.2d 1328 (Ala. 1981). We have declined previously to resolve similar issues because "these challenges were not presented for resolution before the trial court and [were] presented for the first time on appeal." NationwideMutual Ins. Co. v. Clay, 525 So.2d 1339, 1344 (Ala. 1987), cert. denied, ___ U.S. ___, 109 S.Ct. 863, 102 L.Ed.2d 988
(1989). Further, A.R.Civ.P. 51 requires a party to state "the matter to which he objects and the grounds of his objection."
Thus, the threshold question is whether the defendants' objection preserved constitutional issues for appeal. We hold that it did not. The defendants failed to offer a proper objection or to obtain a ruling from which an appeal could be taken. There is nothing for this Court to review.
 V.
The final issue raised by the defendants is whether the trial court erred in failing to grant their motion for a new trial, or, alternatively, to remit the jury verdict.
On September 8, 1987, the trial judge issued a written order, after considering the written motions and lengthy oral argument of counsel. He denied the defendants' motion and their amended motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial judge found that there was clear and convincing evidence of negligence on the part of the defendants. Where the verdict is plainly and palpably supported by the evidence, even as against a preponderance of the evidence, the trial judge should exercise his discretion in favor of the jury verdict's validity. Wright v. Fountain,454 So.2d 520 (Ala. 1984). The record discloses no evidence to warrant a conclusion *Page 87 
that the trial court erred in denying the defendants' motion for JNOV or a new trial.
We next look at the issue of remittitur. We have previously adopted certain guidelines to be used by the trial court in reviewing judgments. Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370
(Ala. 1986); Alabama Farm Bureau Mutual Cas. Ins. Co. v.Griffin, 493 So.2d 1379 (Ala. 1986). The trial judge applied the principles of law adopted in those cases, held a hearing, and set out the reasons why he felt that the law did not authorize him to order a remittitur. He stated as follows:
 "2. With respect to the Motion and amended Motion For Remittitur the Court finds as follows:
 "(a) Alabama law is that a remittitur or a new trial should not be ordered on the grounds of excessiveness of the jury's verdict except where the court can clearly see that the verdict is tainted by bias, passion, prejudice, corruption, or other improper motive or cause on the part of the jury.
 "(b) The Court has carefully considered all of the evidence in the case on all issues including the evidence of negligence of the Defendants and the lack of contributory negligence of the plaintiff's intestate. The Court has carefully considered the nature and quality of the testimony of all the witnesses, as well as the demeanor of each witness while testifying. The Court has further reviewed its Charge to the jury on the issue of damages and has found that it correctly instructed the jury on damages. The jury was instructed that damages provided for in a wrongful death action are punitive only, that the damages are imposed by way of punishment on the wrongdoer to deter the wrongdoer and others from committing similar wrongs in the future and that the damages in this type of action are imposed for the preservation of human life.
 "In addition, the jury was instructed that if they found in favor of the plaintiff and against any or all of the Defendants that in assessing damages they should take into consideration and give due regard to the enormity of the wrong and the necessity of preventing similar wrongs in the future.
 "After a careful review by the Court of the entire trial of the case, including the testimony of all the witnesses, all of the documentary and demonstrative evidence produced at trial, the Court's observations of all parties and witnesses, and the Court's Charge to the jury on damages, the court is convinced that the jury carefully and conscientiously followed the Court's instructions in assessing damages in the case at $3,000.000.00 and that the award is consistent with the Court's instructions and the evidence.
 "The court finds, after a review of the entire trial, that the central issue presented in the Defendants' Motion and Amended Motion for Remittitur is whether or not the jury verdict of $3,000,000.00 in this case is in and of itself evidence of bias, passion, prejudice, corruption or other improper motive or cause. The Court cannot call to mind nor have the attorneys for the Defendant shown to the Court any factor at all that could be construed to indicate bias, passion, prejudice, corruption or other improper motive or cause on the part of the jury. On the contrary, the Court finds that there was clear and convincing evidence of negligence on the part of the Defendants Olympia Spa, David Polur and Brenda McCall, which in the Court's opinion fully justified the jury's verdict.
 "(c) The Court finds that the $3,000.000.00 verdict is not excessive and is not the result of bias, passion, prejudice, corruption or other improper motive or cause." (C.R. 214-215.)
The facts in the record support these findings. Further, jury verdicts are presumed correct and that presumption is strengthened when the presiding judge refuses to grant a new trial. Super Valu Stores, Inc. v. Peterson, supra.
With respect to the question of a remittitur, it is within the authority of this Court *Page 88 
to order a remittitur, pursuant to Code of Alabama (1975), §12-22-71, if it finds the judgment to be excessive. The rules that govern this Court's review of a verdict claimed to be excessive were set out in Vest v. Gay, 275 Ala. 286,154 So.2d 297 (1963):
 " 'The rules governing our consideration of this question are clear and have been reiterated quite often. We refer to them briefly for emphasis: The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much . . .; and the authority vested in the courts to disturb a verdict of the jury on the ground of excessive damages is one which should be exercised with great caution . . .; where there is no set standard for the admeasurement of the damages but the damages to be awarded are left to the sound discretion of the jury, a remittitur or a new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict has been reached on account of bias, passion, prejudice, corruption, or other improper motive or cause . . .; but where the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case the court may interfere and set the verdict aside, . . . also, where the trial court refuses to grant a new trial because [it] does not believe the verdict to be excessive, the favorable presumption attending the jury's verdict is thereby strengthened. . . .' " As quoted in Black Belt Wood Co., Inc. v. Sessions, supra, at 1264-65.
We have examined the record in the light of these rules. We are of the opinion that the judgment of the trial court, including the damages award, which the trial court reviewed on motion for a new trial, is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES and KENNEDY, JJ., concur.
HOUSTON, J., concurs as to issues I, II, and III, and concurs in the result as to issues IV and V.