23 So.3d 57 (2009)
J.K.
v.
N.J. and Jefferson County Department of Human Resources.
2080199.
Court of Civil Appeals of Alabama.
May 1, 2009.
T. David Roper, Bessemer, for appellant.
Sharon E. Ficquette, chief legal counsel, and Karen P. Chambless, staff atty., Department of Human Resources, for appellees.
Neil C. Clay, Bessemer, for appellee N.J.
BRYAN, Judge.
J.K. ("the father") appeals from a judgment of the Jefferson Juvenile Court ordering that, pursuant to § 15-20-26(c)(4), Ala.Code 1975, the father shall not reside with his children.[1]
*58 The facts in this case are undisputed. N.J. ("the mother") and the father were in a relationship in February 2002, when the father pleaded guilty to first-degree rape of his nine-year-old niece. The mother and the father have two children, both girls, Ja.K. and Ji.K. (hereinafter collectively referred to as "the children"). At the time of the hearing in this matter, the children were ages four and two, respectively. The parties have resided together since Ja.K. was born, but they never married. The record shows that the father has at all times provided for the financial, physical, and emotional needs of the children. In October 2007, the Jefferson County Department of Human Resources ("DHR") did a routine background check on the mother and the father after Ja.K. came to school with an injury to her left eye.
A representative from DHR went to the residence shared by the mother, the father, and the children to evaluate their home. The DHR representative later called the mother and informed her that, because of the father's status as a criminal sex offender, DHR would be required to take custody of the children if the mother did not immediately remove the children from the residence they shared with the father. The mother fully complied with DHR's request, and she and the children moved in with the maternal grandparents of the children.
DHR filed a dependency petition for each child, alleging that the children were dependent because they had shared a residence with a criminal sex offender convicted of committing an offense involving a child. After an initial hearing, on November 27, 2007, the juvenile court awarded custody of the children to the mother, and the father was ordered not to reside in the same residence with the children. After the dispositional hearing, on February 20, 2008, the court ordered that custody of the children remain with the mother, ordered the father to continue to keep his own residence, and awarded the father supervised visitation with the children. After another dispositional hearing, on September 2, 2008, the father was adjudged the legal father of the children as the result of genetic testing, and the court found the children dependent based on an admission of the parties. The court ordered that custody of the children remain with the mother, with the father having supervised visitation. On November 13, 2008, the court held a final custody hearing to determine the rights of the parties.
Tiffany Portis, a social worker with DHR, testified that DHR has two "indicated" child-abuse and neglect reports on the father: the first was dated January 21, 2000, and involved the father's fondling a girl at his high school; the second, dated May 14, 2001, involved the incident from which the father pleaded guilty to first-degree rape of his nine-year-old niece.
Portis also testified that she had visited the children on a monthly basis from November 2007 to November 2008. She had observed the children interacting with the father and found that the children have a bond with the father. She testified that she had never observed any inappropriate conduct between the father and the children and that she had received no reports of inappropriate conduct involving the father and the children. She further testified that the father has been responsible for the physically demanding element of caring for the children because the mother has significant health problems, including congestive heart failure, for which she is waiting for a heart transplant.
Portis testified that she could not recommend that the father be allowed to reside in the home with the children because the law forbids him from residing in a residence *59 with a minor because his rape victim was under the age of 12. She testified that she does not have any safety concerns with the father having supervised visitation but that she would have safety concerns if the father was awarded unsupervised visitation because he is a sex offender. She also testified that, but for the father's status as a sex offender, she would have no safety concerns about the father's residing with the children.
Christy Risher, and employee of the Jefferson County district attorney's office, testified that in February 2002 the father pleaded guilty to first-degree rape of his nine-year-old niece. The father was sentenced to two years in prison and five years of probation following his release.
The mother testified that it is her desire for the father to live with her and the children. She also testified that the children miss the father, and she believed it was in the best interest of the children for the father to have unsupervised visitation with the children. The mother testified that, although she was aware that the father had pleaded guilty to raping his nine-year-old niece, she has never been concerned for the safety of her children when they are with the father. She testified that it did not concern her to know that the father was the uncle of his rape victim.
The mother further testified that because of her physical disabilities she depended on the physical and emotional support the father provided, and, she stated, because the father is not permitted to reside with the children, the mother has been dependent on her family members to meet the physical demands of raising children.
During his closing statements, the father's counsel stated: "Judge, we feel that [the father] has a constitutional right to live with his family. We feel that the testimony presented no evidence of anything other than a prior conviction that would impinge on that right." The juvenile-court judge asked the father's counsel at the conclusion of his closing statement: "If [the father] lives with his children and exercises those constitutional rights, wouldn't he violate criminal law in the State of Alabama?" The father's counsel replied: "It's my understanding he would be in violation of the criminal law in the State of Alabama . . . [and] could be subject to an arrest and felony prosecution. . . ."
The father's counsel moved the juvenile court to award the father unsupervised visitation if the court would not allow the father to reside with the children. In his argument in support of the motion, the father's counsel stated: "Judge, [the father] is in a situation where he cannot change the facts. He has to fight the law which we believe is an unconstitutional and unjust law." These references to the constitutionality of § 15-20-26(c)(4) are the only argument the father presented to the juvenile court regarding the constitutionality of that statute.
In its final order, entered on November 18, 2008, the juvenile court found that custody of the children was to remain with the mother, and it awarded the father unsupervised visitation pursuant to this court's decision in S.A.N. v. S.E.N., 995 So.2d 175 (Ala.Civ.App.2008). The juvenile court also ordered that, due to the proscription of § 15-20-26(c)(4), Ala.Code 1975, the father shall not reside with the children. The father timely appeals.[2]
*60 On appeal the father argues that § 15-20-26(c)(4), Ala.Code 1975, violates his substantive-due-process rights under the 14th Amendment of the United States Constitution because, he asserts it denies him his fundamental rights as a father. The father also argues that § 15-20-26(c)(4) violates his equal-protection rights under the 14th Amendment of the United States Constitution.
After careful review of the record, we conclude that the father did not preserve his constitutional arguments for appeal. It is a fundamental principle of appellate procedure that appellate courts cannot "consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration.. . ." State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005) (citing Crutcher v. Wendy's of North Alabama, Inc., 857 So.2d 82, 97 (Ala.2003)).
Although the father's counsel made a general statement to the juvenile court in his closing arguments, asserting that he believed § 15-20-26(c)(4) to be unconstitutional, he never presented specific arguments as to why he believed the statute was unconstitutional. The juvenile court never heard the constitutional arguments the father makes here on appeal. Therefore, the juvenile court lacked the ability to determine whether § 15-20-126(c)(4) violated the father's substantive-due-process or equal-protection rights under the 14th Amendment to the United States Constitution.
In Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala.1991), the Supreme Court of Alabama held:
"In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court. HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989); Marion v. Hall, 429 So.2d 937 (Ala.1983); Stephens v. Central of Georgia R.R., 367 So.2d 192 (Ala.1979). Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated. Central Alabama Elec. Co-Op. v. Tapley, [546 So.2d 371 (Ala.1989)]."
The father did not meet this burden because he simply asserted that § 15-20-26(c)(4) was unconstitutional and he failed to present a specific argument to the juvenile court regarding the specific rights he claimed were being violated by § 15-20-26(c)(4).
The Court of Criminal Appeals addressed this issue in Cole v. State, 721 So.2d 255 (Ala.Crim.App.1998). In that case, "Cole made a general assertion of the unconstitutionality of [two] statutes before the trial judge on the first day of trial." Id. at 260. Cole also submitted a motion to the trial court that stated: "`The collective statutes utilized in this case are all unconstitutional; should be void for vagueness; are overbroad and ambiguous.. . .'" Id. The trial court denied his motion after determining that the statutes were not overly broad or vague.
On appeal, the Court of Criminal Appeals held: "Because of the general and nonspecific character of the grounds assigned in support of Cole's motion, we cannot say the trial court's ruling was in error. . . . `[T]he trial court should not be made to cast about for reasons why a statute might be unconstitutional.'" Id. (quoting Perry v. State, 568 So.2d 339, 340 (Ala.Crim.App.1990)).
*61 Comparing Cole to this case on appeal, it is clear that the father's general arguments regarding the constitutionality of § 15-20-26(c)(4) were not adequate to preserve the constitutional issues he presents on appeal. The record reveals that the father never put forth an argument regarding his substantive-due-process or equal-protection rights.
In Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989), our supreme court refused to review constitutional questions concerning Alabama's Wrongful Death Act because the appellants had not preserved the constitutional issues for appeal. In the trial court, the appellants' counsel had made the following statement to the trial judge, after the judge had charged the jury: "`Simply in the event that we may look at [the issue of punitive damages] later on, we would object to punitive damages [as] being unconstitutional in the current state of Alabama law.'" Id. at 86. In its opinion, the supreme court stated, "[t]his general statement did not produce any ruling by the trial court, so there is nothing to review here." Id. The supreme court continued, "[i]t is settled that constitutional issues must be raised before the trial court in order to be preserved for review upon appeal." Id.
As in Johnson, in this case the father's counsel simply made a general statement to the juvenile court at the end of the proceeding, which produced no ruling by the juvenile court. Therefore, there is no ruling for this court to review, and we affirm the juvenile court's judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
NOTES
[1] Alabama Code 1975, § 15-20-26(c)(4), states:

"(c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, unless one of the following conditions applies:
". . . .
"(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim."
[2] DHR argues that the father's appeal is untimely because it was not filed within 14 days of the juvenile court's first order on November 27, 2007, forbidding him from residing with the children. However, we find that the father properly appealed from the juvenile court's final order of November 18, 2008. See Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990) ("[A]n appeal ordinarily will lie only from a final judgment  i.e., one that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.").