578 So.2d 1041 (1991)
Lomax KILLOUGH
v.
Majid JAHANDARFARD, as father and next friend of Princess Jahandarfard, deceased.
89-925.
Supreme Court of Alabama.
February 15, 1991.
Rehearing Denied April 11, 1991.
*1042 L. Tennent Lee III of Burr & Forman, Huntsville, and Michael B. Beers and Michael S. Jackson of Beers, Anderson, Jackson & Smith, Montgomery, for appellant.
Joseph M. Brown, Jr. and Andrew T. Citrin of Cunningham, Bounds, Yance, Crowder and Brown, Mobile, and Gary V. Conchin of Higgs & Conchin, Huntsville, for appellee.
SHORES, Justice.
Lomax Killough appeals from a judgment based upon a jury verdict awarding Majid Jahandarfard $2.5 million on a claim against Killough. We affirm.
On July 18, 1988, Jahandarfard filed an eight-count complaint under Alabama Code 1975, § 6-5-391, based on the alleged wrongful death of his daughter, Princess. The child died of carbon monoxide inhalation asphyxiation due to a fire in the Jahandarfard house. The house was owned by Killough, who rented it to the Jahandarfards, and it was not equipped with a smoke detector on the morning of Princess's death. State and local law at the time of Princess's death required smoke detectors to be placed in rental units.
On November 9, 1989, the jury returned its verdict against Killough, and on the same day the trial judge entered a judgment in accordance with the verdict.
Killough filed a motion for a judgment notwithstanding the verdict ("J.N.O.V.") or, in the alternative, for a new trial or remittitur. Killough also requested that the trial court conduct a hearing in accordance with the mandates of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), to review the judgment and consider remitting it based on excessiveness.
*1043 A Hammond hearing was held on January 4, 1990, but the trial court did not rule on any of Killough's motions; thus, on February 12, 1990, after the motions had been pending for 90 days, they were denied pursuant to Rule 59.1, A.R.Civ.P. The trial court failed to enter a Hammond order concerning the judgment, and Killough appealed.
We remanded the case to the trial court to enter a Hammond order, 578 So.2d 1041, and on November 8, 1990, the trial court issued the following order:
"This is an action for the wrongful death of plaintiff's minor daughter, Princess Jahandarfard. Section 6-5-391, Code of Alabama, 1975. The only claim submitted to the jury was founded on wantonness. The jury returned a verdict awarding $2.5 million and judgment was entered accordingly.
"A post-trial hearing was held at which the Court heard evidence and arguments of counsel on the issue of asserted excessiveness of the judgment. The Court failed to rule on defendant's post-trial motions and they were denied pursuant to Rule 59.1, A.R.Civ.P., on February 12, 1990. The defendant appealed.
"The case is remanded by the Alabama Supreme Court for entry of a post-trial order in accordance with the mandates of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).
"Having observed the trial, the actions and reactions of the jurors and the conduct of counsel, the Court is of the opinion and expressly finds that the jury's decision-making process was not tainted by bias, passion, prejudice or any improper motive. The Court further finds that the jury's award does not exceed an amount which will allow for society's goals of punishment and deterrence. Each of the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), [has] been considered by the Court. The Court has also compared the verdict in this case with other jury verdicts in wrongful death cases. The Court finds that the verdict is not excessive and declines to reduce it.
"All other post-trial motions which have not been denied by operation of Rule 59.1, A.R.Civ.P., are overruled and denied."
Killough contends that the judgment entered against him pursuant to § 6-5-391, deprives him of his property in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and deprives him of equal protection of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 6, and 22, of the Alabama Constitution. Killough also argues that the award of punitive damages in his case is a violation of the excessive fines clause of the Eighth Amendment to the United States Constitution and Article I, § 15, of the Alabama Constitution, that the Hammond review procedure does not adequately protect his due process rights, and that the verdict below is excessive.

I. Due Process

Killough argues that § 6-5-391 provides no standards for the imposition of damages, in that a plaintiff may recover any amount a jury may assess for any wrongful act, omission, or negligence resulting in the death of a minor. This argument has been rejected by this Court; see Pacific Mutual Life Insurance Co. v. Haslip, 553 So.2d 537 (Ala.1989); Central Alabama Electric Co-op. v. Tapley, 546 So.2d 371 (Ala.1989); United American Ins. Co. v. Brumley, 542 So.2d 1231 (Ala.1989); HealthAmerica v. Menton, 551 So.2d 235 (Ala. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990); Olympia Spa v. Johnson, 547 So.2d 80 (Ala. 1989), and it is here rejected again.

II. Equal Protection

Killough contends that the exclusion of § 6-5-391 from legislation enacted by the Legislature and codified at §§ 6-11-1 through 6-11-30 is a violation of equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 6, and 22, of the Alabama Constitution. Among other things, these statutes restrict punitive damages awards in tort actions *1044 (other than wrongful death actions) to those tort actions based upon acts of oppression, fraud, wantonness, or malice, proven by clear and convincing evidence. A cap of $250,000 is placed on punitive damages awards, excluding wrongful death actions. Killough argues that, because § 6-5-391 was excluded from the operation of the legislation, he was not given the same protection of law as other classes of defendants concerning the imposition of punitive damages; he argues also that the jury was allowed to award punitive damages if it was reasonably satisfied that Jahandarfard was entitled to recover based upon the evidence, and not on the basis of clear and convincing evidence that Killough consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Jahandarfard. Further, Killough suggests that, but for the exclusion of § 6-5-391 from the legislation, he would be entitled to the application of the $250,000 cap on the jury's verdict.
The Legislature has elected to treat wrongful death tort-feasors differently from other tort-feasors, and the ability to so classify is a power inherent in the Legislature, so long as the classification bears a rational relationship to a state interest not prohibited by the United States Constitution. Nowak, Rotunda, and Young, Treatise on Constitutional Law: Substance and Procedure, § 18.3 at 324 (1986).
The only damages available in a wrongful death action in Alabama are punitive damages, Tapley, 546 So.2d at 376, and this is the critical difference between wrongful death actions and actions addressed by the Legislature in the recent tort reform legislation. In Tapley, we also noted the Legislature's reasoning behind allowing only punitive damages in wrongful death actions:
"The sanctity of human life, the noble goal of preserving human life, and society's desire to punish those whose conduct results in the loss of human life, have all been accepted by our Legislature as criteria outweighing the [seeming] anomaly of permitting punitive damages for simple negligence. This view rests on the premise that one may be adequately compensated for his injuries, but the value of human life has no measure. Punishing the tort-feasor dissuades others from engaging in life-endangering conduct."
Id.
In upholding our policy of awarding punitive damages in wrongful death actions, the United States Supreme Court recognized that the purpose was to "strike at the evil of the negligent destruction of human life." Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116, 47 S.Ct. 509, 510, 71 L.Ed. 952 (1927). The Court went on to conclude that "it [is not] beyond the power of the legislature, in effecting such a change in the common law rules, to attempt to preserve human life by making homicide expensive." Id. at 116, 47 S.Ct. at 510. The Legislature has obviously decided that an arbitrary cap can not be placed on the value of human life. The exemption of wrongful death actions from caps on punitive damages awards bears a rational relationship to a legitimate state interest not prohibited by the Constitution, and the exemption does not violate the right to equal protection under the law.
In limiting the damages in a wrongful death action to punitive damages only, the Legislature reflects the conviction of the citizens of this state that the value of human life can not be measured in dollars. The loss felt by a parent in the death of a child can not be compensated. The pain of loss of a gifted, beautiful child is no more severe than the pain caused by the loss of an impaired child. In the Legislature's view, the value of the life of the community's most prominent citizen is no greater than the value of the life of its most desolate or despicable citizen. To leave with the jury the determination of what amount should be imposed as damages to punish the defendant who caused the loss and to deter others from similar conduct is a perfectly reasonable way to accomplish the legislative goal of deterring conduct that endangers life.
This notion is not unique to Alabama's wrongful death actions. The Supreme Court of the United States, in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 *1045 L.Ed.2d 440 (1987), recognized that the character of the victim was irrelevant to a determination of whether the defendant should be sentenced to death for taking the victim's life. In doing so, it recognized that the value of human life can not be measured. Whether a defendant is to be sentenced to death for taking another's life can not depend upon whether his victim was the community's most prominent citizen or its most desolate or despicable. The Alabama wrongful death statute, as construed by this Court for almost a century, is based upon the same conviction. We do not believe the Constitution extends to a defendant in a civil wrongful death action greater protection than it affords a criminal defendant whose life is at stake. Surely, the constitutional protection of a defendant's money can not exceed that extended to his life. See, also, South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989).
Alabama's law in a civil wrongful death action requires of the jury the same thing that Booth requires in a capital case: that the focus of the jury be the defendant's conduct. It can not consider the "value" of the victim in either case. It must make its determination of the punishment to be administered to the defendant based exclusively upon the culpability of the defendant. In the civil case, it must determine what amount of money is required to sufficiently punish the defendant, considering the gravity of the wrong committed. In the criminal case, it must consider the gravity of the offense, any aggravating circumstances, and any mitigating circumstances. It may not consider the value of the life of the victim in either case.

III. Eighth Amendment

Killough argues that an award of punitive damages under Alabama's wrongful death statute constitutes an "excessive fine" and is a violation of the Eighth Amendment to the United States Constitution and Article I, § 15, of the Alabama Constitution. Not only has this Court rejected this argument, Kumar v. Lewis, 561 So.2d 1082 (Ala.1990); Tapley, supra; Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812 (Ala.1988), but the United States Supreme Court has held that the Eighth Amendment's excessive fines clause is not applicable to awards of punitive damages in cases between private parties. Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Therefore, punitive damages awards under our wrongful death statutes do not violate the Eighth Amendment.

IV. Due Process and Hammond
Killough argues that the procedure of post-verdict review of a jury's award of punitive damages, established by Hammond and its progeny, violates his right to due process of law. Specifically, Killough contends that the criteria of Hammond and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), are largely unreviewable and merely transfer discretion from the jury to the reviewing court. In "an abundance of concern for the preservation and protection of a defendant's constitutional right to due process," Pacific Mutual Life Insurance Co. v. Haslip, 553 So.2d 537 (Ala.1989), this Court has created the Hammond post-verdict procedure. By the Hammond procedure, the civil defendant is protected in two ways: "First, a requirement of `reasonableness, of proportionality, of sensible relation between punishment and offense,' and, second, a guarantee of `not just bare survival, but continued productive economic viability'"; "due process mandates at all times, in all circumstances, and for all defendants, `fundamental fairness' at the hands of the law." C. Jeffries, A Comment on the Constitutionality of Punitive Damages, 72 Va.L.Rev. 139, 156, 151-52, as quoted in Industrial Chemical, 547 So.2d at 838, 835. The mandates of due process within the punitive damages context also require a balance between the due process rights of the plaintiff and those of the defendant. Id. at 835. This is the goal of Hammonda balance of rights for both plaintiff and defendant.
This Court has consistently held that the Hammond post-verdict review provides the defendant with fundamental *1046 fairness while at the same time allowing society to perpetuate the punishment and deterrence of unacceptable conduct. See Industrial Chemical and Tapley, supra. The Hammond review process, considered with the other established safeguards (remittitur, motion for new trial, and appeal from the denial of either), provides the civil defendant a solid, committed, and true attempt at fundamental fairness.
As to the claim that the Hammond factors merely transfer discretion from a jury to a review court, we once again emphasize that "no attempt to enumerate all the factors which may be considered by the trial court has been made, [leaving that to the sound discretion of the trial court], ... and there can be no ironclad rule in considering the adequacy or excessiveness of a verdict. Each case must be determined by its own facts and on its own merits." Hammond, at 1379. The Hammond procedure gives the trial court a constitutionally sound framework for analysis and review of a jury's verdict, while allowing the trial court the freedom to consider other relevant factors. We know of no better method of insuring fundamental fairness for both plaintiff and defendant, nor has Killough suggested a better way, than the Hammond procedure.

V. Excessiveness

The final argument advanced by Killough is that the verdict is excessive because, he says, it will have a devastating economic impact on him. Killough states that if he liquidated his total available net worth and applied the limits of his liability insurance (leaving him nothing), then $1.9 million of the jury's verdict would remain unsatisfied. The issue of whether an award could or would destroy a civil defendant has troubled both trial and appellate courts alike, and even the existence of Hammond does not relieve this Court of its responsibility to consider whether an award is excessive. Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala.1990).
A jury's award of punitive damages will be considered excessive, as a matter of law, only if: 1) the jury's decision-making process was tainted by bias, passion, prejudice, or other improper motive, Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1264 (Ala.1986); or 2) the verdict goes beyond that necessary to accomplish society's goals of punishment and deterrence. Green Oil Co., 539 So.2d at 221. Having considered the record in this case, and having compared verdicts in similar cases that have come to this Court, we conclude that the award of $2.5 million is not excessive.
In its Hammond order, the trial court said that the jury's decision was not tainted by bias, passion, prejudice, or any other improper motive. As we noted in Hammond:
"[T]he trial judge is better positioned to decide whether the verdict is so flawed. He has the advantage of observing all of the parties to the trialplaintiff and defendant and their respective attorneys, as well as the jury and its reaction to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review trial court action in this sensitive area, although increasingly they are required to do so."
Hammond, 493 So.2d at 1378. The trial court in the present case followed the factors of Hammond and Green Oil Co. in making its decision, and it was obviously in the best position to decide if the trial court's finding was based upon bias, passion, prejudice, corruption, or other improper cause.
As to the punishment and deterrence goals of punitive damages, the verdict in this case is not excessive in light of the fact that the case went to the jury on a theory of wantonness only; it was the jury's opinion that Killough's failure to equip the Jahandarfard home with a smoke detector was wanton and was the proximate cause of the death of the child. Such a finding reflects directly upon the gravity of Killough's conduct, the need to punish such conduct, and the need to prevent it from occurring again.
One factor of Hammond and Green Oil Co. is the financial position of the defendant. *1047 The trial court considered Killough's financial position when it refused to remit the jury's award, based upon the same economic impact argument Killough makes before us.
The defendant argued at the Hammond hearing that if the verdict was not reduced it would have a devastating financial effect on him. The defendant argued that his liability coverage was only $300,000 and that he was financially unable to bear the burden of the remainder of the verdict. In response to this argument, the plaintiff states to this Court that since the Hammond hearing, the defendant's insurance carrier has posted a supersedeas bond in the amount of $3.125 million. He has filed a motion in this Court to incorporate the supersedeas bond as a part of the record on appeal. This he has a right to do, since the trial court denied a similar motion, and since the defendant continues to argue that the verdict should be reduced because of the financial impact it will have upon him.
The fact that the judgment has been superseded by the insurance carrier is material to our treatment of this argument. In his original brief, the plaintiff argued that the reason the insurance carrier posted a supersedeas bond in an amount 10 times greater than the limits of the policy was that it recognized its potential liability to its insured in having refused to settle the case for the policy limits, although it was requested to do so prior to trial. The defendant does not challenge this explanation for his insurance carrier's posting a supersedeas bond for an amount greatly in excess of the policy limits. Neither does the insurance carrier, which presumably is defending the insured. We, of course, express no opinion as to whether the insurance company may be liable to its insured for failing to settle the underlying case for the policy limits, but the fact that the judgment against its insured has been superseded at its expense is material to the argument that the verdict, if not reduced, will have a devastating effect on the insured, an effect sufficient to destroy him financially.
These matters are material to our consideration of the trial court's action on the post-judgment hearing required by Hammond, because we must review these matters, as should the trial court, in view of the true impact upon the defendant, and to do that we must know the true facts.
The jury in this case has determined that the defendant was guilty of wanton conduct in causing the death of the plaintiff's daughter. The plaintiff has a right to have that determination made by a jury. This the constitution of this State guarantees to him. The Constitutions of the United States and of this State guarantee to the defendant equal protection of the laws and due process of law.
We hold that, under the facts of this case, the defendant's constitutional rights have not been violated. The record indicates that the trial court reviewed the verdict of the jury, permitting each side to present evidence in support of, and evidence in opposition to, that verdict, as is required under the procedure established in Hammond, restated in Green Oil Co., and subsequently reaffirmed in several cases. We can not hold that the constitutional rights of the defendant in this case have been violated by allowing the verdict of the jury to stand unreduced. Because the defendant's arguments are limited to constitutional challenges to the verdict and because we have rejected those challenges, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., concur in the result.
MADDOX, Justice (concurring in the result).
I concur in the result reached that the verdict of $2.5 million is not excessive, but I should not be understood as agreeing with that portion of the opinion that holds that the procedure by which that verdict was reached comports with the due process requirements of the Fourteenth Amendment to the Federal Constitution.
*1048 The Supreme Court of the United States is now reviewing the due process issues in an appeal from a judgment of this Court entered in Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), cert. granted, ___ U.S. ___, 110 S.Ct. 1780, 108 L.Ed.2d 782 (1990), and in that case the Court is expected to determine if Alabama's procedure for awarding punitive damages in civil cases is fundamentally fair, as the majority in this case holds. I dissented in Haslip and expressed the opinion that the Supreme Court of the United States may reverse the judgment of this Court in that case.[1]
I have always been of the opinion that wrongful death cases were in a different category insofar as the amount of punitive damages that could be awarded, but I have not agreed that Alabama's procedures were without Constitutional problems. See my opinion concurring in part and dissenting in part in Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 833 (Ala.1988). My opinion in Industrial Chemical was based primarily upon a statement made by the Supreme Court of the United States in Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 47 S.Ct. 509, 71 L.Ed. 952 (1927): "We cannot say that it is beyond the power of the legislature, in effecting such a change in common law rules, to attempt to preserve human life by making homicide expensive." 274 U.S. at 116, 47 S.Ct. at 510.
As the majority points out, the legislature has placed a cap on punitive damages awards, except in wrongful death actions. Consequently, the size of the award would not necessarily violate any legislative policy regarding a jury's right to award punitive damages in this case. Although a jury is not otherwise restricted in the amount it might determine would be sufficient to make a wrongful death "expensive," that fact does not necessarily answer the question posed herewhether the failure to give the jury some guidelines in making that determination is constitutionally infirm. Insofar as I can tell, this precise issue has not yet been considered by the Supreme Court of the United States, but is pending in the Haslip case.
If the Supreme Court of the United States reverses the judgment of this Court in Haslip, I am of the opinion that the procedure for making an award in a wrongful death case would not be treated differently from the procedure used in Haslip, and the fact that the Supreme Court has stayed judgments from this Court in wrongful death cases convinces me that this is so. That is why I concur in the result only.

ON APPLICATION FOR REHEARING
SHORES, Justice.
APPLICATION OVERRULED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs in the result.
MADDOX, Justice (concurring in the result to deny rehearing).
On original deliverance, I concurred in the result, but pointed out that the United States Supreme Court had before it for review the case of Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), and that "the Supreme Court of the United States [might] reverse the judgment of this Court in that case," in which Alabama's procedure for awarding punitive damages was being challenged. The Supreme Court has now affirmed. Pacific Mut. Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, *1049 113 L.Ed.2d 1 (1991), holding that Alabama's procedure for reviewing punitive damages awards "ensures meaningful and adequate review." In my opinion, the Supreme Court of the United States was under the impression that, in Alabama, the Hammond-Hornsby procedures guarantee that jury verdicts will be independently reassessed by both trial and appellate courts.
In a dissent in Armstrong v. Roger's Outdoor Sports, Inc., [Ms. 88-1190, March 8, 1991] (Ala.1991), decided shortly after the Haslip decision had been released, I stated that the Hammond-Hornsby review does not ensure an independent assessment of jury verdicts as envisioned in Haslip.[2] As I expressed in that dissenting opinion, I think that the opinion of the Supreme Court of the United States in Haslip was based, in part, on that Court's belief that the Hammond-Hornsby review ensured an independent assessment by trial and appellate courts. I pointed out in that dissent that counsel for Ms. Haslip argued before the Supreme Court that Alabama's procedure provided for an independent reassessment of the awards by juries of punitive damages,[3] and I think that it is clear from a reading of the opinion in Haslip that the Supreme Court erroneously concluded that the Alabama procedure provided for an independent reassessment of jury awards of punitive damages.
Even though I do not believe that the Hammond-Hornsby procedure authorizes the type of "independent reassessment" that I believe Haslip is based on, I concur in the result. I agree that, even if I did an independent reassessment in this case, I would conclude that the verdict in the amount of $2.5 million is not excessive, because this is a wrongful death case, and Alabama has the power "to attempt to preserve human life by making homicide expensive." Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116, 47 S.Ct. 509, 510, 71 L.Ed. 952 (1927). I would also point out that the legislature, in the so-called "tort reform package," has not put a "cap" on punitive damages awards in wrongful death cases.
NOTES
[1] Since the Supreme Court granted certiorari review in Haslip, that Court has stayed this Court's judgments in the following cases:

88-376Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala.1990), stayed November 29, 1990.
89-0014Intercontinental Life Ins. Co. v. Lindblom, 571 So.2d 1092 (Ala.1990), stayed in December 1990.
88-1289Southern Life & Health Insurance Co. v. Turner, 571 So.2d 1015 (Ala.1990), stayed January 10, 1991.
Some of those cases are wrongful death actions, as this one is; that fact leads me to believe that in Haslip the court is primarily interested in Alabama's procedure for awarding punitive damages in all civil actions.
[2] In Armstrong, this Court held that the state legislature could not adopt an act authorizing an independent review of jury awards of punitive damages and declared unconstitutional an act doing so.
[3] In Haslip, in oral arguments before the Supreme Court, Haslip's counsel argued that "[t]he Hammond-Hornsby standard of review which the Alabama Supreme Court has been adopting since 1986, expressly provides that jury verdicts will be independently reassessed by trial and appellate courts in order to determine whether the amount set by the jury is more than would be necessary to accomplish society's goals of punishment and deterrence." (Emphasis added.)