[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 315 
The corporate defendant and its personnel director, John L. Fiddler, appeal from a judgment based on a jury verdict on a retaliatory discharge claim.[1] The jury rendered a verdict in favor of the plaintiff, David Mokrzycki, in the amount of $122,240 compensatory damages and $100,000 punitive damages. We affirm.
Mokrzycki, alleging retaliatory discharge, sued under Ala. Code 1975, § 25-5-11.1. He claimed that Continental Eagle Corporation ("CEC") terminated his employment because he had filed a worker's compensation claim for a back injury he sustained while at work. Mokrzycki saw the company doctor, and he was unable to work for one week. On May 30, 1989, the doctor released Mokrzycki, but restricted him to light labor. Mokrzycki performed light labor at CEC; then on June 6, 1989, he complained to his supervisor that his back was bothering him. The CEC supervisor released Mokrzycki from work to see a doctor. The neurosurgeon Mokrzycki saw recommended surgery to repair a ruptured disc in his back.
Mokrzycki testified that after his visit to the doctor he was unable to get out of bed and could not go to work. Mokrzycki presented evidence that his wife telephoned CEC's personnel office to explain that he was unable to work because of back pain. Mokrzycki's wife testified that she telephoned each day that Mokrzycki did not go to work. CEC, however, claims that it never received calls from her. After Mokrzycki had been absent from work eight days, CEC sent him a letter telling him that it considered him to have "voluntarily terminated" his employment with CEC because it had not heard from him in eight days.
Mokrzycki contends that this termination was wrongfully made in retaliation for his having filed for worker's compensation benefits. CEC contends that it never terminated him, but that he terminated his own job by failing to follow the company's policy on absences, which requires that employees who are absent from work notify CEC of the absence by following specified procedures. Mokrzycki presented evidence that CEC failed to follow its own policy by failing to give Mokrzycki either written or oral notice, before discharging him because of unexcused absences, as required by the policy. Mokrzycki also demonstrated that CEC knew that its actions would harm him. The jury awarded him $122,240 in compensatory damages and $100,000 in punitive damages.
Shortly after the jury returned its verdict, the parties settled Mokrzycki's claim against CEC for worker's compensation benefits. Therefore, the jury was presented no evidence regarding any amounts paid by CEC to Mokrzycki for his worker's compensation claim.[2]
CEC appeals, challenging the jury verdict on a number of issues. CEC also appeals the denial of its motion for summary judgment.
 I. Summary Judgment
CEC filed a motion for summary judgment, which the trial court denied. CEC contends that the trial court erred in denying that motion. We note that, to prevail on its motion, CEC was required to show, by admissible evidence, that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c), A.R.Civ.P. On review, this Court must evaluate the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, *Page 317 Inc., 564 So.2d 412, 413 (Ala. 1990); Harrell v. Reynolds MetalsCo., 495 So.2d 1381, 1383 (Ala. 1986); Wilson v. Brown,496 So.2d 756, 758 (Ala. 1986).
Once CEC made this showing, Mokrzycki then had the burden of presenting evidence creating a genuine issue of material fact.Danford v. Arnold, 582 So.2d 545, 546 (Ala. 1991); Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). The present action was filed after June 11, 1987; therefore, all factual showings must be supported by substantial evidence. Ala. Code 1975, § 12-21-12; Bass v.SouthTrust Bank of Baldwin County, supra. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). To withstand a motion for summary judgment, a plaintiff claiming retaliatory discharge under §25-5-11.1 must present substantial evidence that he or she was terminated for seeking worker's compensation benefits, and that the reasons proffered by the employer for the termination are not true, but are a pretext for an otherwise impermissible termination. Twilley v. Daubert Coated Products, Inc.,536 So.2d 1364, 1369 (Ala. 1988).
In deposition, Mokrzycki initially testified that he thought CEC terminated him because of a "lack of communication." Later in the same deposition, however, Mokrzycki indicated that CEC had fired him because he filed a worker's compensation claim. CEC contends that the trial court erred in considering Mokrzycki's deposition testimony in support of his claim. CEC argues that Mokrzycki changed his testimony to create an issue of fact in an attempt to avoid a summary judgment. We have held that a party is not allowed to directly contradict prior sworn testimony to avoid the entry of a summary judgment. Doe v.Swift, 570 So.2d 1209, 1214 (Ala. 1990). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Doe v. Swift, at 1214, quoting Robinson v. HankRoberts, Inc., 514 So.2d 958, 961 (Ala. 1987), quoting in turnVan T. Junkins Assocs., Inc. v. U.S. Indus., Inc.,736 F.2d 656, 657 (11th Cir. 1984).
The record reveals that Mokrzycki's modification of his testimony occurred within the same deposition and occurred because Mokrzycki "didn't understand" the question. Mokrzycki did not directly contradict his testimony "just to create an issue of fact in an attempt to avoid a summary judgment."Doe v. Swift, supra, at 1214. Therefore, the trial court properly considered Mokrzycki's deposition testimony.
After carefully reviewing the record, we conclude that Mokrzycki presented sufficient evidence to establish the existence of genuine issues of material fact regarding CEC's termination of Mokrzycki and the cause of that termination. Therefore, the trial court properly denied CEC's motion for summary judgment.
 II. Juror Misconduct
CEC contends that the trial court erred to reversal in failing to grant a new trial on the grounds of juror misconduct. After the trial, CEC discovered something that it claims was a juror's misconduct and that it alleges probably prejudiced CEC's right to peremptorily challenge the juror. CEC then made a motion for a new trial on that basis, which the trial court denied.
The record indicates that a juror, P.C., worked as a legal secretary to an attorney who had represented a plaintiff in a case similar to the one in this case shortly before and during the trial of this case. P.C. typed the necessary pleadings, put together trial exhibits, and relayed telephone messages.
P.C. did not respond affirmatively to the following question asked during voir dire of the jury venire:
 "BY THE COURT: Any of you know of or have any reason why you should not be selected to serve on this jury?" *Page 318 
CEC contends that P.C.'s failure to disclose her involvement in a similar case probably prejudiced CEC and requires a new trial. The issue before us is whether the trial court abused its discretion in denying CEC's motion for a new trial based on P.C.'s failure to answer on voir dire that she was a secretary to a lawyer who handled a separate, but similar, lawsuit.
When the trial court is presented with a new trial motion based upon either an improper or a nonexistent response to a voir dire question, "the court must determine whether the response or lack of response has resulted in probable prejudice to the movant." Eaton v. Horton, 565 So.2d 183, 185 (Ala. 1990);Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970). The question of prejudice is primarily within the trial court's discretion, and any ruling on the motion for new trial will be reversed only upon a showing of an abuse of the trial court's discretion. Eaton, at 185.
Here, the question posed by the trial court was general. CEC offered no evidence that P.C. intentionally failed to answer or did not answer truthfully. In fact, CEC does not show that the juror was required to reveal her involvement in response to such a general question. The alleged misconduct in this case does not establish a false answer to the voir dire, and it does not establish "probable prejudice." Therefore, the trial court did not abuse its discretion in denying CEC's motion for a new trial.
 III. Improperly Obtained Jury Verdict
CEC contends that Mokrzycki gave false or deliberately misleading testimony with respect to his 1990 income tax return. CEC asserts that this alleged misleading testimony amounts to a misrepresentation and is grounds for setting aside the judgment based on the jury verdict, under Rule 60(b)(3), A.R.Civ.P. Under Rule 60(b)(3), a court may relieve a party from a final judgment for fraud, misrepresentation, or other misconduct of an adverse party.
To obtain relief under Rule 60(b)(3), the party asserting that an adverse party improperly obtained a verdict through fraud, misrepresentation, or other misconduct must prove, by clear and convincing evidence, that: 1) the adverse party engaged in fraud or other misconduct, and 2) the misconduct prevented the moving party from fully and fairly presenting his or her case. Pacifico v. Jackson, 562 So.2d 174, 179 (Ala. 1990) (citing Montgomery v. Hall, 592 F.2d 278, 279 (5th Cir. 1979)). The trial court must exercise its discretion in determining whether the party seeking relief under Rule 60(b)(3) met these requirements. On review, "our only inquiry is whether the trial court abused its discretion." Pacifico, at 179.
CEC contends that Mokrzycki obtained the jury verdict by convincing the jury that he was honest and that he did so through fraud, misrepresentation, or misconduct. At trial, CEC argued that Mokrzycki lacked credibility and was unworthy of belief. As one example of Mokrzycki's alleged dishonesty, CEC attempted to demonstrate that Mokrzycki had failed to report approximately $9,000 of military income. On direct examination by CEC's counsel, Mokrzycki stated that the income in question had been reported on an amended form. However, evidence presented during a post-trial hearing indicates that Mokrzycki did not amend his tax returns and report his military income until approximately four weeks after the conclusion of the trial.
On cross-examination, Mokrzycki explained that he had given the necessary forms to his accountant and that he thought the amendment had been filed or would be filed within the three-month deferment granted to all military personnel who served in Operation Desert Shield. CEC contends that Mokrzycki's misrepresentation at trial, that he had already amended his tax returns when, in fact, he had not, prevented CEC from fully and fairly presenting its case, specifically from portraying Mokrzycki as lacking credibility.
However, the record reveals that CEC did present arguments regarding Mokrzycki's lack of trustworthiness, based on this example and others. The jury heard Mokrzycki's testimony and had the opportunity to assess his credibility. CEC was *Page 319 
not prevented from impeaching Mokrzycki's honesty by Mokrzycki's alleged misrepresentation. Accordingly, the trial court did not abuse its discretion in denying CEC's post-judgment motion to set aside the verdict on the basis of fraud, misrepresentation, or other misconduct.
 IV. Admissibility of Pattern and Practice Evidence
CEC contends that the trial court abused its discretion by denying its motion in limine and its motion for a mistrial on the basis of Mokrzycki's presentation of five pattern and practice witnesses. The trial court granted CEC's motion in limine in part, allowing the pattern and practice witnesses to testify that they received worker's compensation and were subsequently terminated by CEC; however, they were not allowed to state their opinion regarding the cause of their termination. After Mokrzycki presented these witnesses, CEC moved for a mistrial on the same grounds, which the trial court denied. CEC contends that the trial court erred to reversal in allowing these witnesses to testify at trial because, it says, there was no substantial similarity between the actions involving the pattern and practice witnesses and the actions involving Mokrzycki, and because their testimony was irrelevant.
The trial judge has wide discretion in considering a motion for a mistrial. Georgia Casualty Sur. Co. v. White,582 So.2d 487, 495 (Ala. 1991). The trial court's decision "may not be reversed unless it clearly appears that its discretion has been abused." General Finance Corp. v. Smith, 505 So.2d 1045, 1049
(Ala. 1987); Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699, 701
(Ala. 1982).
The trial court heard arguments on this motion both before the trial and after Mokrzycki had put on his case. The trial court heard the witnesses testify in camera before allowing them to testify at trial. The trial court determined that these witnesses had had experiences substantially similar to Mokrzycki's and therefore permitted these witnesses to testify.
The trial court relied upon C. Gamble, McElroy's AlabamaEvidence, § 84.01(2) (4th ed. 1991), in ruling on CEC's motion for a mistrial. This section states that "[t]here is common law authority in this state that, for the purpose of showing negligence or other improper conduct, a party is entitled to prove matters of custom and usage." The plaintiff's claim of retaliatory discharge constitutes "other improper conduct" for which proof of the defendant's pattern and practice is admissible. Therefore, we see no abuse of discretion in the trial court's permitting these five pattern and practice witnesses to testify at trial.
 V. Whether Claim is Supported by Substantial Evidence
CEC contends that the trial court erred in denying its motions for a directed verdict and a judgment notwithstanding the verdict, because it says Mokrzycki's claim of retaliatory discharge is not supported by substantial evidence. In reviewing the trial court's denial of CEC's motions for a directed verdict and JNOV, we are bound by the same standard as the trial court. Ogle v. Long, 551 So.2d 914, 915 (Ala. 1989). We must determine whether the party with the burden of proof has produced sufficient evidence of a conflict warranting a jury's consideration. Macon County Comm'n v. Sanders,555 So.2d 1054, 1056 (Ala. 1990); Bussey v. John Deere Co., 531 So.2d 860,862 (Ala. 1988). The evidence must be viewed in a light most favorable to Mokrzycki, the nonmoving party. Twilley v. DaubertCoated Products, Inc., 536 So.2d 1364, 1367 (Ala. 1988);Wadsworth v. Yancey Bros. Co., 423 So.2d 1343, 1345 (Ala. 1982).
In Twilley, this Court set out the burden of proof necessary to establish a retaliatory discharge claim under Ala. Code 1975, § 25-5-11.1:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer *Page 320 
to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
536 So.2d at 1369. Relying upon the holding inTwilley, this Court held in Hayden v. Bruno's, Inc.,588 So.2d 874, 876 (Ala. 1991), that a plaintiff had failed to present aprima facie case where he had failed to present evidence that he was terminated because he had filed a claim for benefits.
CEC contends that Mokrzycki did not make the showing required to support his claim of retaliatory discharge. Given that the Court must review the evidence most favorably to the prevailing party and must indulge all reasonable inferences that the jury was free to draw, Warren v. Ousley, 440 So.2d 1034, 1037
(Ala. 1983), we conclude that Mokrzycki did present sufficient evidence to establish a claim of retaliatory discharge. In addition to the evidence presented in opposition to CEC's motion for summary judgment, Mokrzycki presented pattern and practice testimony and additional evidence in support of his claim. We find substantial evidence to warrant a jury's determination of Mokrzycki's retaliatory discharge claim. Therefore, the trial court properly denied CEC's motions for a directed verdict and a judgment notwithstanding the verdict.
 VI. Propriety of the Compensatory Damages Award
Our review of the following issues begins with a presumption that a jury verdict is correct. White v. Fridge, 461 So.2d 793,794 (Ala. 1984); Alpine Bay Resorts, Inc. v. Wyatt,539 So.2d 160, 162 (Ala. 1988). The strength of the jury verdict is based upon the right to trial by jury. White v. Fridge, supra. This presumption of correctness is strengthened by the trial court's denial of a motion for a new trial. This Court has noted the following regarding this presumption:
 "A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the trial judge. . . .
 "In reviewing the correctness of a jury verdict, this Court must review the record in a light most favorable to the appellee."
Continental Casualty Ins. Co. v. McDonald, 567 So.2d 1208, 1211
(Ala. 1990) (quoting Pate v. Sunset Funeral Home, 465 So.2d 347,350 (Ala. 1984)).
The jury awarded compensatory damages in the amount of $122,240, including $10,000 specified as compensation for mental anguish. CEC contends that the jury's compensatory damages award is void and contrary to the law and evidence because, it says, the award was based on Mokrzycki's wages lost as a result of his on-the-job injury rather than on his wages lost as a result of his alleged termination. CEC argues that wages lost as a result of a decrease in earnings capacity due to an injury are not compensable under § 25-5-11.1, under which section Mokrzycki sued CEC.
Although § 25-5-11.1 does not refer to the damages available for violation of its provisions, this Court has construed that section to permit a recovery of damages in accord with the general law of torts. Caraway v. Franklin Ferguson Mfg. Co.,507 So.2d 925, 926 (Ala. 1987). General tort law permits recovery of all damages proximately caused by the wrongful acts of the defendant. C. Gamble, Alabama Law of Damages, § 36-1 (2d ed. 1988).
Mokrzycki contends that both his mental anguish and loss of wages were proximately caused by CEC's wrongful termination of his employment. Both of these items are compensable under the general law of torts and, thus, under Ala. Code 1975, §25-5-11.1. M. Roberts, Alabama Tort Law Handbook, § 16.3.4 (1990) (noting that because of Caraway's holding that the general tort law of damages applies to retaliatory discharge claims, "the natural and proximate compensatory damages, such as lost wages and mental distress, may be recoverable" (emphasis added)). *Page 321 
CEC argues that Mokrzycki's loss of wages was not a proximate result of his termination but was caused by his back injury. CEC attempted to reconstruct the jury verdict to demonstrate that the jury improperly calculated the amount of lost wages to compensate for Mokrzycki's back injury, rather than for his termination.
The record indicates that even after his back surgery, Mokrzycki could have worked for CEC at the same rate of pay he was making before he injured his back and that he could have done so for 13 more years, until the age of 65. Mokrzycki argues that he thus sustained no decrease in earnings due to his back injury. The record further establishes that after CEC terminated Mokrzycki, his earnings decreased from $9 an hour at CEC to approximately $5 an hour. Reviewing the record in a light most favorable to Mokrzycki, as we are required to do, we conclude that the evidence supports an inference that Mokrzycki's loss in earnings capacity was proximately caused by CEC's wrongful termination of Mokrzycki.
CEC's attempted reconstruction of the verdict based on its assumption that the jury compensated Mokrzycki improperly is misplaced. In addition, CEC's reconstruction fails to take into account the jury's apportionment of the damages: $112,240 for lost wages and $10,000 for mental anguish. Therefore, this argument is without merit.
Mokrzycki is entitled to recover lost wages to the extent that he has not been compensated for this loss pursuant to the Workmen's Compensation Act. Although Mokrzycki was paid temporary disability benefits under the Workmen's Compensation Act, he was not compensated for the full value of his lost wages until the parties settled his claim for worker's compensation benefits. The parties reached this settlement after the jury had returned its verdict on the retaliatory discharge claim. Therefore, when the jury returned its verdict, Mokrzycki was entitled to compensation for wages lost as a result of CEC's wrongful termination. CEC's allegations as to the effect of any additional recovery that resulted from settlement of the worker's compensation claim after the trial and judgment are simply not reviewable on this appeal.
In light of the strong presumption of correctness that attaches to a jury verdict and the evidence in support of that verdict, we conclude that this verdict is not "plainly erroneous or manifestly unjust." The evidence supports the jury verdict awarding Mokrzycki $122,240 in compensatory damages.
 VII. Propriety of the Punitive Damages Award
The jury awarded Mokrzycki $100,000 in punitive damages, and CEC challenges the propriety of that award. After a careful review of the record and the applicable law, we disagree with CEC's arguments.
This Court is bound by a presumption of correctness of the amount of punitive damages rendered by the trier of fact.Shoals Ford, Inc. v. Clardy, 588 So.2d 879, 884 (Ala. 1991). We may not reverse the judgment, based on a jury verdict, on the ground that the evidence was insufficient unless that evidence, when viewed in a light most favorable to Mokrzycki, indicates that the verdict was "plainly and palpably wrong and unjust."Carter v. Henderson, 598 So.2d 1350, 1354 (Ala. 1992). "A jury's award of punitive damages will be considered excessive, as a matter of law, only if: 1) the jury's decision-making process was tainted by bias, passion, prejudice, or other improper motive; or 2) the verdict goes beyond that necessary to accomplish society's goals of punishment and deterrence."Killough v. Jahandarfard, 578 So.2d 1041, 1046 (Ala. 1991) (citation omitted).
After conducting a hearing under Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), the trial court properly considered the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218,223-24 (Ala. 1989). The trial court determined that the jury's award was not tainted by bias, passion, prejudice, or any other improper motive and that the verdict was not excessive. *Page 322 
The trial court "is better positioned to decide whether the verdict is so flawed." Hammond, 493 So.2d at 1378. We defer to the trial court's determination in the absence of evidence that the verdict was "plainly and palpably wrong and unjust." Carterv. Henderson, 598 So.2d 1350, 1354 (Ala. 1992). CEC presented no such evidence.
We note that the punitive damages award is less than the compensatory damages award. After examining the record, analyzing CEC's culpability, comparing verdicts in similar cases, and considering other relevant factors, we conclude that the $100,000 punitive damages award is not excessive.
 VIII. Constitutional Challenge
CEC also raises an additional issue for the first time on appeal: It asserts that the retaliatory discharge provision of the Workmen's Compensation Act is unconstitutional.
We must first determine whether this issue is properly before this Court. "In order for this Court to review the constitutionality of a legislative act, the appellant must have raised that issue in a court below that had jurisdiction to adjudicate that issue." Docena Fire District v. Rucker,564 So.2d 422, 424 (Ala. 1990) (citing Wallace v. State,507 So.2d 466 (Ala. 1987)). See also Campbell v. Alabama Power Co.,567 So.2d 1222, 1225 (Ala. 1990) (holding that issues not raised in the trial court may not be raised later on appeal); Chatman v.City of Prichard, 431 So.2d 532, 533 (Ala. 1983) (holding that this Court need not address the merits of an argument raised for the first time on appeal); Smiths Water Authority v. Cityof Phenix City, 436 So.2d 827, 830-31 (Ala. 1983) (holding that this Court will not consider a theory or issue that was not pleaded or raised in the trial court); Hutchins v. Shepard,370 So.2d 275, 276-77 (Ala. 1979) (holding that an issue not raised in the trial court cannot be raised for the first time on appeal); McWhorter v. Clark, 342 So.2d 903, 905 (Ala. 1977); and McDuffie v. Hooper, 294 Ala. 293, 296, 315 So.2d 573, 576
(1975). CEC failed to raise this issue before the trial court; therefore, this issue is not properly before this Court.
Accordingly, the judgment based on the jury verdict in favor of Mokrzycki is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Because the two defendants raise identical issues and make identical arguments, we have addressed these issues and arguments only in terms of the corporate defendants.
[2] CEC's argument that the jury improperly compensated Mokrzycki twice for the same loss in earnings capacity is therefore not before this Court on CEC's appeal of the judgment based on the jury verdict. See, infra, part VI.