ON APPLICATION FOR REHEARING
Our opinion of September 28, 1990, is withdrawn and the following is substituted therefor.
This is an appeal from a jury verdict awarding $3,012,400 to the plaintiff, Ms. Lou R. Lindblom, against the defendant, Intercontinental Life Insurance Company (hereinafter "Intercontinental"), for bad faith failure to pay insurance benefits, *Page 1094 
breach of contract, misrepresentation, and fraud. We affirm.
The appellant has raised many issues on appeal dealing with the denial of its post-trial motions and with questions regarding the constitutionality of the award of punitive damages. The record reveals the following facts relevant to this appeal:
In November 1980 Ms. Tommie Rodenberry applied for a life insurance policy with Intercontinental. Larry Culver of the Culver Agency submitted the application to Intercontinental. On December 1, 1980, Intercontinental issued a term life insurance policy (number 178427) to Tommie Rodenberry. The policy designated Ms. Lou R. Lindblom as the beneficiary of the policy, with $10,000 in benefits. The premium payments were originally due and payable quarterly beginning in December 1980. The policy provided in its relevant parts as follows:
 "PAYMENT OF PREMIUMS — The first premium is due on or before the Policy Date. You may choose to pay your premiums at 12, 6, 3, or 1 month intervals. Each payment is due on or before the first day of the payment period. . . .
 "The policy shall lapse if premiums are not paid in full when due. Please refer to the 'Grace Period' provision.
 "GRACE PERIOD — a grace period of 31 days after the due date will be allowed for payment of each premium after the first, without interest, during which period the policy shall continue in full force. If the insured dies during the grace period, any pro rata premium due and unpaid will be deducted from the amount payable under this policy. This policy will lapse without value at the end of the grace period."
Intercontinental introduced evidence at trial that in addition to the written 31-day grace period, it voluntarily granted an extended two-week (14-day) grace period at the end of the 31-day period, making the total grace period 45 days. This "extra" grace period was not included in the insurance contract, nor was Ms. Lindblom ever informed of its existence. Intercontinental introduced further evidence that if the end of the grace period fell on a weekend or holiday, the period was extended to the next business day.
From December 1980 through November 1983, Ms. Lindblom made the quarterly payments on the policy. Sometime in December 1983 or January 1984, she decided that she desired to convert the payment plan from the quarterly plan to a monthly plan. On January 1, 1984, she wrote to Intercontinental, informing it of her desire to pay the premiums monthly from then on and enclosing the monthly premium payment specifically designated for December 1983 ($32.06). This letter also stated that she would remit the payment for January 1984 as soon as she received notice from Intercontinental. At that time, the December 1983 payment was 31 days past due. It appeared from the evidence at trial that Intercontinental made no reply to Ms. Lindblom's letter.
Ms. Lindblom's next premium payment was made on February 2, 1984. Intercontinental decided to back-apply this payment to cover the January 1984, payment which was then unpaid and 32 days past due, outside the written 31-day grace period but within the unwritten extended grace period. Ms. Lindblom continued to remit payments each month from February 1984 through October 1985 to Intercontinental. Intercontinental accepted each of these payments.
Evidence offered at trial showed that while Ms. Lindblom made each payment in the early part of each month from February 1984 through October 1985, because of Intercontinental's decision to continuously back-apply these payments to cover the missed January 1984 payment, virtually all of these payments were received outside the 31-day grace period. During this time Intercontinental contacted Ms. Lindblom on at least two occasions to inform her of premium increases. At no time did Intercontinental inform her of the fact that she had missed the January 1984 payment or of the fact that her payments were continuously received outside the 31-day grace period. *Page 1095 
Intercontinental continued its practice of back applying Ms. Lindblom's payments through August 1985, when problems began to develop. When Intercontinental received a check dated August 5, 1985, it applied it toward the July 1985 premium, which had not been paid. The next check Intercontinental received was dated September 15, 1985. Again, Intercontinental treated this check as the payment of the August 1985 premium. When this check was entered into the computer system, the computer designated the policy "terminated" and showed "no premium applied." Upon subsequent review of all such computer entries by Intercontinental, employees discovered that the check had not been applied to this policy because the policy had lapsed. Ms. Lindblom, who was at that time unaware of the problem, sent in her payment for October. On October 11, 1985, Intercontinental wrote Ms. Lindblom and informed her of the lapse. Ms. Lindblom, who believed she was current on the policy and could not understand how it had lapsed, contacted Mr. Culver at the Culver Agency about the problem. Ms. Lindblom presented Mr. Culver with copies of the cancelled checks for the August and September 1985 premium payments. Mr. Culver told Ms. Lindblom that he would take care of it. Mr. Culver instructed Ms. Lindblom to send him a copy of the cancelled October 1985 premium check when she received it from her bank. Later, when Mr. Culver received this check and spoke with Ms. Lindblom, he informed her that the policy was still in force.
On October 23, 1985, Tommie Rodenberry died. On November 8, 1985, Ms. Lindblom filed a claim with Intercontinental for the death benefits under the policy. After Intercontinental personnel examined the claim and the policy, they informed Ms. Lindblom, through the Culver Agency, that the benefits could not be paid because the policy had lapsed as of August 1, 1985, due to nonpayment of premiums. At this point Intercontinental did not refund any premiums paid after the alleged lapse. The Culver Agency contacted Intercontinental on several occasions and sent Intercontinental copies of the cancelled checks for Ms. Lindblom's August, September, and October payments. The Culver Agency apparently believed that the policy should not have lapsed and sought to assist Ms. Lindblom. On each occasion Intercontinental confirmed that the policy had lapsed effective August 1, 1985, and refused to pay the benefits. Intercontinental eventually refunded the amount of two payments received after the alleged lapse.
On November 19, 1986, Ms. Lindblom sued Intercontinental, the Culver Agency, and Mr. Culver, alleging wrongful refusal to pay the benefits under the policy and seeking $10,000 compensatory damages and $1,000,000 punitive damages. Upon Intercontinental's petition, the case was removed to a federal district court. The federal district court, however, found removal inappropriate and remanded the case to the Circuit Court of Jefferson County.
After remand, Ms. Lindblom amended her complaint to allege that the Culver defendants had been guilty of misrepresentation and concealment while acting as agents of Intercontinental. Ms. Lindblom's complaint, in its final form, alleged: breach of contract, bad faith failure to pay on the insurance contract, misrepresentation, fraudulent suppression, outrage, and conversion. Intercontinental moved for summary judgment on all claims. The trial court granted the motion as to the claims of outrage and conversion, but denied it as to the other claims. At the end of the plaintiff's case-in-chief and again at the end of the presentation of all the evidence, Intercontinental moved for a directed verdict, which was denied. After closing arguments, Intercontinental requested a special verdict and requested that the jury be given verdict forms to differentiate compensatory damages from punitive damages. The trial judge denied these requests and submitted the case to the jury.
The jury returned a verdict exonerating the Culver defendants from any liability but assessing damages against Intercontinental in the amount of $3,012,400. Intercontinental timely filed alternative motions for a judgment notwithstanding the verdict, a remittitur, or a new trial. These *Page 1096 
post-trial motions were denied by the trial court. Because one of the issues raised in the post-trial motions was an alleged excessiveness of the verdict, the trial judge, pursuant toHammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), conducted a hearing on that issue and found no excessiveness.
As noted, Intercontinental has raised several issues for our review on this appeal. At the outset however, we must address the nature of the insurance policy issued by Intercontinental and the actions of the parties involved. An examination of these factors will effectively dispose of the issues raised by Intercontinental, requiring only minimal review. Our consideration of these areas requires a two-step analysis: (1) an examination of the insurance contract itself and (2) an examination of the conduct of the parties.
With respect to the insurance contract, the primary area of concern is with the grace period. As set out above, the insurance contract contains a 31-day grace period for the receipt of insurance premiums. Intercontinental maintains that it voluntarily grants an additional grace period of two weeks (14 days) at the end of the 31-day grace period, making the total grace period 45 days. This additional extended grace period is not mentioned anywhere in the policy, nor was it ever revealed to Ms. Lindblom. In our review of this case and of the insurance contract, we cannot give any validity to this extended, unwritten grace period, as it is not part of the written contract and never became part of the contract. The "extended grace period" argument, under the facts of this case, appears to be merely a convenient way for Intercontinental to justify its acceptance of premium payments outside of the 31-day grace period, insure continued payments, and keep the policy in force, all without the knowledge of the insured or the beneficiary.
Because Intercontinental set up a practice whereby it continuously back-applied some 20 or more payments it received outside the 31-day grace period and made no attempt to treat the policy as lapsed, it could not arbitrarily cease this practice and treat the policy as lapsed in August 1985 by claiming that payment was not made within the 31-day grace period. This Court will not allow Intercontinental to establish such a practice and then to suddenly change it. Allowing such a practice gives Intercontinental virtually absolute power over the contract and leaves persons such as Ms. Lindblom helpless.
Moreover, a plausible alternative reading of the evidence could indicate that the policy actually lapsed in January 1984 when Ms. Lindblom informed Intercontinental that she would remit the January payment as soon as she received notice. Because Intercontinental never notified her as to the change in payment plans, her next check was dated February 2, 1984, and Ms. Lindblom made each subsequent payment on time, including the August and September 1985 payments. We conclude that Intercontinental waived its right to lapse the policy by not doing so when the January payment was overdue and by accepting payments past the 31-day grace period.
Because it impliedly agreed to accept payments made outside the grace period for approximately two years, Intercontinental could not arbitrarily stop this practice in August 1985. Furthermore, Intercontinental ignored the missed January 1984 payment and back-applied all subsequent payments. With respect to the specific issues Intercontinental now raises on appeal, we have consolidated several issues for clarity and briefly address them below, in light of the foregoing.
Intercontinental raises five issues in this appeal: (1) Whether a judgment notwithstanding the verdict should have been granted for Intercontinental on any of the plaintiff's claims; (2) whether a new trial should have been granted for Intercontinental on the ground that the jury returned a general verdict and at least one of the claims against Intercontinental was insufficient; (3) whether a remittitur or a new trial should have been granted for Intercontinental on the ground that the jury's verdict was necessarily the result of bias, passion, or other improper motive and was *Page 1097 
otherwise excessive; (4) whether the verdict is unconstitutional under the due process clause of the United States Constitution; and (5) whether a remittitur or a new trial should be ordered by this Court on appeal.
Intercontinental first argues that a judgment notwithstanding the verdict should have been granted in its favor with respect to the plaintiff's claims of breach of contract, bad faith, and misrepresentation. We disagree. Our discussion of Intercontinental's right to a J.N.O.V. will bring into focus our view of Intercontinental's other claims. We begin by stating the standard of review applicable to a denial of a judgment notwithstanding the verdict, as set out by this Court in Elrod v. Ford, 489 So.2d 534 (Ala. 1986):
 "To be entitled to either a directed verdict or J.N.O.V., Defendant must have proved to the trial judge that, from the evidence before the court at the time each motion was made, there was 'a complete absence of proof on a material issue or [that there were] no controverted questions of fact on which reasonable people could differ,' and that Defendant was entitled to judgment as a matter of law. Deaton, Inc. v. Burroughs, 456 So.2d 771, 773 (Ala. 1984). Stated conversely, the motions for directed verdict and J.N.O.V. should not have been granted if reasonable inferences in favor of Plaintiff's claims could have been drawn from the evidence or if there was any conflict in the evidence for resolution by a jury. O'Donohue v. Citizens Bank, 350 So.2d 1049
(Ala.Civ.App. 1977)."
489 So.2d at 537. With regard to each of these claims, the plaintiff has clearly met the burden set out in Elrod. Contrary to Intercontinental's argument, the plaintiff presented sufficient evidence to warrant submission of her claims to the jury.
Intercontinental first attacks the plaintiff's breach of contract claim. Intercontinental contends that its actions of accepting payments did not constitute a waiver, because, it says, the company policy was to grant an additional 14-day grace period. We have dealt with this grace period above and only need point out here that the extended grace period has no validity. As for Intercontinental's actions in accepting payments outside the 31-day period, the plaintiff's evidence raised reasonable inferences supporting the argument that Intercontinental did waive any right to "lapse" the policy due to late payments and thereby breached the contract by lapsing the policy and refusing to pay benefits. Furthermore, the evidence could have supported a finding that the policy actually lapsed in January 1984, and that all subsequent payments were made on time, and that because Intercontinental did nothing in January it waived any right to lapse the policy in August. This claim was, thus, properly submitted to the jury.
The second claim Intercontinental attacks is the bad faith claim. Intercontinental argues that even if it was not entitled to a judgment notwithstanding the verdict on the breach of contract claim, it was entitled to one the bad faith claim, because, it argues, the plaintiff's proof in support of her contract claim does not rise to the level entitling the plaintiff to a directed verdict. National Savings LifeInsurance Co. v. Dutton, 419 So.2d 1357 (Ala. 1982). In Dutton, as Intercontinental correctly points out, Justice Shores stated:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim."
Dutton, 419 So.2d at 1362 (citing National Security Fire Casualty Co. v. Bowen, 417 So.2d 179 (Ala. 1982)). While both parties acknowledge that the plaintiff did not move for a directed verdict, in reviewing the evidence we have come to the conclusion that the plaintiff would have been entitled to a directed verdict; thus the Dutton requirement was satisfied. The evidence in support of that claim is overwhelming. Because Intercontinental had no legal justification for refusing to pay the claim, no matter how the evidence is construed, the only reasonable conclusion *Page 1098 
is that Intercontinental breached the contract when it refused to pay the benefits.
Assuming, arguendo, that the plaintiff would not succeed on a motion for directed verdict, Intercontinental's contention still fails. This Court has addressed this issue on numerous occasions. We have consistently noted that there will be many cases that do not meet the qualification of "normal" or "ordinary" spoken of in Dutton, and that in such cases the "directed verdict on the contract claim" test should not apply.See National Savings Life Insurance Co. v. Dutton,419 So.2d 1357 (Ala. 1982) (Jones J., concurring). See also Thomas v.Principal Financial Group, 566 So.2d 735 (Ala. 1990) (wherein Justice Houston undertook an exhaustive analysis of the development of the "directed verdict on the contract claim" test). The case now before this Court is just such a case.
The two elements of a bad faith claim were set out inChavers v. National Security Fire Cas. Co., 405 So.2d 1
(Ala. 1981):
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.' "
Chavers, 405 So.2d at 7 (quoting Vincent v. Blue Cross-BlueShield of Alabama, 373 So.2d 1054 (Ala. 1979)). As mentioned above, Dutton established the "great" burden that is on the plaintiff in proving a bad faith claim. Dutton, however, qualified the rule regarding this burden so as to prevent the insurer from avoiding liability in certain extreme situations. After Dutton, we found it necessary on several occasions to restrict the application of this great burden.
First, in Continental Assurance Co. v. Kountz, 461 So.2d 802,806 (Ala. 1984), we stated:
 "Second, even if Continental could defeat Kountz's directed verdict on the contract claim, this case is not the 'normal' or 'ordinary' case described in Dutton; in an extraordinary case like this the directed verdict standard is inapplicable. Aetna Life Cas. Insurance Company v. Lavoie, 470 So.2d 1060 (Ala. 1984)."
In Kountz we noted that proof of an intentional failure to determine whether there was a lawful basis for denying payment could be used to establish that the insurer had no legitimate reason to deny the payment. Kountz, 461 So.2d at 807. This Court in Kountz held that the evidence showed that the insurer had intentionally failed to determine whether there was a lawful basis for denying the claim, and that that showing supported an inference of bad faith. Id. at 808. See also AetnaLife Casualty Insurance Co. v. Lavoie, 470 So.2d 1060
(Ala. 1984) (extraordinary evidence of "reckless indifference" toward insured in breach of duty of good faith and fair dealing properly submitted to jury).
In Jones v. Alabama Farm Bureau Mutual Casualty Co.,507 So.2d 396 (Ala. 1986), the only basis of denial rested on the resolution of the single factual issue of what the insured had told the insurance adjuster. In Jones we stated:
 "Although the plaintiff's burden of proof in a bad faith action is great, it should not be insurmountable. Precluding a plaintiff's bad faith action by application of the 'directed verdict on the contract claim' test when the disputed factual issue arises solely from a contradicted oral conversation between the insurer and the insured . . . puts too onerous a burden on the plaintiff. Moreover, it would frustrate the purpose of the bad faith action by allowing an insurer simply to misrepresent the content of an oral conversation to avoid liability."
Jones, 507 So.2d at 401. Jones held that it was error to grant a partial summary judgment because there was a disputed factual issue to be decided by the jury. Id. See also United AmericanInsurance Co. v. Brumley, 542 So.2d 1231 (Ala. 1989) (it would frustrate the purpose of the bad faith action to allow an insurer to prevent a bad faith claim from going to the jury by misrepresenting the content of oral or written communications). The case now before us presents an analogous "extraordinary" *Page 1099 
situation. Intercontinental, over the course of nearly two years, accepted and back-applied payments outside of the grace period and made no effort to investigate Ms. Lindblom's payment history or to inform her of possible lapses. Moreover, there was conflicting testimony as to whether any "pre-lapse" notices were sent to Ms. Lindblom. At trial, Intercontinental employees testified that such notices were sent, while Ms. Lindblom denied ever receiving them. Under the facts of this case, the existence or nonexistence of these notices raises a presumption in favor of the plaintiff's argument that Intercontinental intentionally ignored late payments in order to keep the policy in force, to guarantee continued payments, and failed to determine if there was any valid reason for denying the claim. Finally, we note that the evidence tended to show that Intercontinental employees, upon reviewing the denial of the claim, merely consulted a computer or other employees and reported that the policy had lapsed due to nonpayment of premiums. This effort by Intercontinental is wholly insufficient to amount to an investigation into the basis for the denial of payments. Intercontinental has not only intentionally failed to investigate whether there was a valid reason to deny the claim, but has also failed to investigate any part of the policy at any time. Under Kountz and Aetna, this intentional failure to investigate whether there was a valid reason to deny the claim amounts to an intentional failure to determine whether there was any lawful basis for denying the claim and creates the inference of bad faith.
Furthermore, considering Jones and Brumley, we note that the action of bad faith would be frustrated by permitting Intercontinental to avoid liability merely by misrepresenting the existence or the content of pre-lapse notices. The resolution of the issue whether these notices were sent to Ms. Lindblom, is partly determinative of Intercontinental's investigation practices throughout the existence of this policy. These facts illustrate why this case is anything but ordinary or normal. The facts presented a question whether Intercontinental investigated to determine if there was a valid reason to deny payment of benefits, and that question was properly submitted to the jury for resolution. We hold, therefore, that the Dutton "directed verdict on the contract claim" test does not apply here and that the trial judge properly submitted the bad faith claim to the jury.
Intercontinental also attacks the denial of a judgment notwithstanding the verdict on the misrepresentation claim. Here again, Intercontinental argues that the plaintiff made no showing of any misrepresentation. Contrary to Intercontinental's interpretation of the facts, the record contains numerous examples of misrepresentations to Ms. Lindblom. The actions of Intercontinental in continuously accepting late payments and its taking no steps to advise Ms. Lindblom of this fact or to advise her of its so-called extended grace period, as well as the actions of the Culver Agency, all create reasonable inferences to support the plaintiff's claim of misrepresentation. Thus, we hold that the trial judge properly submitted this claim to the jury for resolution.
The next issue raised by Intercontinental is whether a new trial should have been granted in its favor on the ground that the jury returned a general verdict and at least one claim against Intercontinental was insufficient. Intercontinental argues that if it was entitled to a directed verdict on any one or more of the plaintiff's five claims submitted to the jury, then the verdict must be set aside and a new trial ordered. In short, we are of the opinion that Intercontinental was not entitled to a directed verdict on any of the five claims. The plaintiff's evidence presented differing interpretations and raised reasonable presumptions in her favor. The trial judge properly denied Intercontinental's motion for a directed verdict and submitted the claims to the jury. Furthermore, we see no error in the general form of the jury verdict.
Intercontinental next argues that a new trial or a remittitur should have been granted for Intercontinental because, it says, the jury verdict was necessarily the result of bias, passion, or other improper *Page 1100 
motive and was otherwise excessive. We disagree with both of its arguments.
After the jury returned the verdict, the trial judge entered his findings regarding questions of alleged excessiveness of the verdict, pursuant to Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986). After carefully reviewing the evidence before the jury, the trial judge concluded that the evidence clearly established that Intercontinental's conduct warranted the punitive award.
As for a motive for the jury to give an excessive verdict, Intercontinental maintains that the conduct of the plaintiff at trial in, among other things, testifying as to the nature of Ms. Rodenberry's illness, the presence of Ms. Lindblom's retarded son, and testifying that Ms. Lindblom remained at home to care for Ms. Rodenberry caused the jury to disregard the legal requirements applicable to Ms. Lindblom's claim and to decide the case out of passion and pity for Ms. Lindblom's situation. This argument is unpersuasive. Much of the testimony that Intercontinental now cites as error was either elicited by counsel for Intercontinental or was not objected to at the time the testimony was given. Furthermore, much of what Intercontinental claims caused the jury to abandon its duty to decide the case on legal grounds does not, as we see it, rise to a level that could have affected the jury in the manner Intercontinental contends. This is an extreme case. Much of the testimony Intercontinental now attacks is relevant and was properly put before the jury in order for it to make an informed decision.
Intercontinental next attacks the jury verdict as unconstitutional. Specifically, Intercontinental argues that the law of punitive damages lacks fundamental fairness because it is vague, arbitrary, and imposes no standards or limits. However, as Intercontinental correctly points out, the Supreme Court of the United States held in Browning-Ferris Industriesof Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, ___,109 S.Ct. 2909, 2916, 106 L.Ed.2d 219 (1989), that the excessive fines clause of the eighth amendment does not apply to punitive damages awards in cases between private parties. This Court has, in line with Browning-Ferris, consistently declined to hold that the award of punitive damages is unconstitutional. See HealthAmerica v. Menton, 551 So.2d 235
(Ala. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1166,107 L.Ed.2d 1069 (1990); Olympia Spa v. Johnson, 547 So.2d 80
(Ala. 1989); Pacific Mutual Life Insurance Co. v. Haslip,553 So.2d 537 (Ala. 1989), cert. granted, ___ U.S. ___,110 S.Ct. 1780, 108 L.Ed.2d 782 (1990). Also, the trial judge carefully reviewed the evidence presented and the constitutional arguments raised and concluded that the award did not violate the Constitution. We agree with the trial court that the evidence of Intercontinental's conduct warranted the punitive award here and that that award is not unconstitutional.
Last, Intercontinental renews its argument before this Court that the award of $3,012,400.00 is excessive and urges this Court to order a remittitur pursuant to Ala. Code 1975, §12-22-71. The trial court followed the Hammond guidelines and found no reason to disturb the jury verdict. However, this Court still has the responsibility to consider whether the award is excessive, because we must assure some degree of uniformity in the area of punitive awards.
After a thorough examination of the record in this case and a comparison of verdicts in similar cases that have come before this Court, we conclude that the award of $3,012,400 is excessive and should be reduced by $2,012,400. We therefore affirm the judgment of the trial court, conditioned upon the acceptance of a remittitur of $2,012,400 by Ms. Lindblom, within 28 days of the date of this substituted opinion, which will result in a judgment in her favor of $1,000,000.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED CONDITIONALLY; APPLICATION OVERRULED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur. *Page 1101 
MADDOX, J., concurs specially.
KENNEDY, J., concurs in part and dissents in part.