Rita B. Barnett sued Funding Plus of America, Inc., a/k/a Time Payment Plan ("Funding Plus"); Southern United Fire Insurance Company ("Southern United"); Meriweather Insurance Agency ("Meriweather"); and several fictitious defendants, alleging fraudulent suppression (i.e., concealment). Her claim arose out of the defendants' alleged retention of insurance-premium payments made by Barnett after her automobile liability insurance policy had been canceled. The trial court entered a summary judgment in favor of all the defendants. Because we hold that the defendants owed Barnett no duty to inform her that her payments were not being accepted and applied to reinstate and maintain her insurance policy, we affirm.
 I.
On June 3, 1993, Barnett went to Meriweather, an independent insurance agency, seeking automobile liability insurance. Meriweather placed coverage with Southern United. Barnett made a down payment on the premium. After Southern United reviewed Barnett's application, it determined that her down payment was insufficient.[1] Thereafter, Southern United sent Barnett a notice of intent to cancel the policy as of June 29, 1993, for nonpayment of the balance of the down payment. After Barnett failed to pay the balance, Southern United canceled the policy, on June 29, 1993, and refunded Barnett the unearned premium.
On July 15, 1993, Barnett again went to Meriweather, and Meriweather placed a second policy of insurance with Southern United. Twice Barnett failed to make her monthly premium payment by the due date, and, each time, Southern United sent Barnett a notice of intent to cancel her policy for nonpayment of the premium. In each instance, Barnett paid the premium before the effective cancellation date. Therefore, the policy was not canceled and there was no lapse in coverage.
After Barnett's second policy expired, she obtained a third policy from Southern United. Once again, Barnett failed to make her monthly premium payments as scheduled and Southern United sent her a notice of intent to cancel her policy for nonpayment of the premium. Again, Barnett paid the premium before the effective cancellation date. The policy was not canceled and there was no lapse in coverage.
After the third policy expired, Barnett obtained a fourth policy from Southern United, covering the period July 15, 1994, through January 15, 1995. Again, Barnett failed to make one of her monthly premium *Page 1071 
payments, and Southern United sent her a notice of intent to cancel her policy for nonpayment of the premium. Again, Barnett paid the premium before the effective cancellation date. The policy was not canceled and there was no lapse in coverage.
In December 1994, while her fourth policy was in effect, Southern United sent Barnett a renewal quotation, offering her several renewal options. One of the options provided for a 12-month policy with the premium payable in an initial down payment and nine monthly installments thereafter, with each monthly payment due on the 10th day of the month. The first installment was due on February 10, 1995. Under this 12-month installment-payment option, the policy premium would be financed by Funding Plus, an insurance-premium finance company.[2] On the back of the renewal quotation was an insurance-premium finance contract, which Barnett was required to sign if she chose the financing option. Under the terms of the finance contract, Funding Plus was given a power of attorney and was authorized to cancel the policy for nonpayment of amounts owed under the finance contract.[3] Barnett chose the 12-month installment-payment option and signed the renewal-quotation agreement.[4]
Meriweather had no involvement in Barnett's renewal of her policy.
After Barnett made the down payment directly to Southern United, she received a letter from Funding Plus informing her, among other things, that it had financed her premium, and enclosing a coupon book for her to use in making monthly installment payments to Funding Plus. Barnett made seven monthly installments to Funding Plus. However, she failed to make her eighth monthly installment by the due date of September 10; on September 15, 1995, Funding Plus mailed Barnett a notice of intent to cancel her policy for nonpayment. The notice informed Barnett that if Funding Plus did not receive payment within 10 days, it would request cancellation of her policy. Barnett testified that she received this notice and that she understood that if Funding Plus did not receive her payment within 10 days, that is, by September 25, 1995, then Funding Plus would request cancellation of her policy. After receiving this notice, Barnett did not contact anyone at Meriweather, at Southern United, or at Funding Plus. Barnett further testified that she did not send a payment before September 25. On September 25, having received no payment from Barnett, Funding Plus mailed Southern United a cancellation notice, asking Southern United to cancel Barnett's policy as of September 25. *Page 1072 
That same day, September 25, Funding Plus also mailed a cancellation notice to Barnett, at the same address to which it had mailed the notice of intent to cancel, and it mailed a similar cancellation notice to Meriweather. Pursuant to Funding Plus's request, Southern United canceled Barnett's policy, with the cancellation effective September 25. On September 26, Southern United mailed to Barnett a notice of final cancellation; that notice stated that her policy had been canceled as of September 25 and that the unearned premium would be returned to Funding Plus. On the same day, Southern United also mailed the same notice to Meriweather. Barnett denies that she received the cancellation notices from Funding Plus and Southern United.
On September 30, Southern United mailed Barnett's unearned premium to Funding Plus. From the unearned premium, Funding Plus deducted amounts overdue and deducted a late fee and wrote a check to Barnett for the balance. Funding Plus mailed the check to Meriweather, which received it on October 13.
After her policy had been canceled, Barnett mailed to Funding Plus a check for the overdue eighth monthly installment. The check was dated September 27, 1995, and the envelope was postmarked September 28, 1995.[5] Funding Plus did not cash or deposit this check. Instead, on October 5 Funding Plus sent the check to Meriweather at Meriweather's Eutaw, Alabama, office. The Eutaw office in turn forwarded the check to Meriweather at its Tuscaloosa office. Meriweather's Tuscaloosa office received the check on October 19.
Barnett, on October 4, mailed Funding Plus a second check for the ninth and final monthly installment. Funding Plus did not cash or deposit the check. On October 10, Funding Plus returned the check to Meriweather's Eutaw office, which in turn forwarded it to the Tuscaloosa office. The Tuscaloosa office received that check on October 26.
According to Meriweather, on October 13 its Eutaw office mailed Barnett an application for insurance with an attached note informing Barnett that her insurance had been canceled and that she would have to complete a new application in order to reinstate her insurance. However, the envelope was improperly addressed, and Barnett denies receiving the application or the note.
On October 26, Barnett was involved in an automobile accident. That same day, Barnett telephoned Ginger Spence, a Meriweather employee, to report the accident. According to Barnett, during this telephone conversation she was informed for the first time that her insurance had been canceled as of September 25 and that she had no insurance. Barnett also testified that she inquired as to the payments that she had mailed and was told by Spence that the checks, along with the refund check, were on Spence's desk. Barnett said she asked why the checks were on Spence's desk and that Spence replied by stating that she was waiting for Barnett to contact her in response to the application that had been mailed. The next day Meriweather mailed the three checks to Barnett.
In March 1996, Barnett sued Funding Plus, Southern United, Meriweather, and several fictitious defendants. Barnett stated one count of fraudulent suppression, alleging that the defendants had suppressed — fraudulently concealed — the fact that the payments had not been applied to reinstate and maintain her policy. Each of the three defendants moved for a summary judgment, and the trial court granted their motions. The trial court concluded:
 "Although the facts of this case would probably support a cause of action against the defendant Meriweather *Page 1073 
Agency for negligence in mailing notices to the plaintiff using an incorrect zip code, and against defendant Funding Plus for violation of the usury law, these causes of action were not [pleaded] by the plaintiff[;] . . . there [was] not substantial evidence to support a cause of action for fraudulent concealment against any defendant."
Barnett appeals from the summary judgment entered for the three defendants.
 II.
Our standard for reviewing a summary judgment is well established. "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as . . . the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John DeereCo., 531 So.2d 860, 862, 863 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989). In determining whether the nonmovant presented substantial evidence creating a genuine issue of material fact, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. See Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
 III.
On appeal, Barnett argues that she presented substantial evidence as to each of the elements of her fraudulent-suppression claim. Ala. Code 1975, § 6-5-102, provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
In order to establish a prima facie case of fraudulent suppression, a plaintiff must show: (1) that the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose that fact; (3) that the defendant's concealment or failure to disclose that fact induced the plaintiff to act or to refrain from acting; and (4) that the defendant's action resulted in harm to the plaintiff. Booker v. UnitedAmerican Ins. Co., 700 So.2d 1333, 1339 n. 10 (Ala. 1997). Barnett argues that she presented substantial evidence from which the fact-finder could find each of these elements, namely: (1) evidence indicating that the fact that her payments had not been used to reinstate and maintain her policy was material; (2) evidence indicating that the defendants failed to disclose to her the fact that her payments had not been used to reinstate and maintain her policy; (3) evidence indicating that the defendants were under an obligation to communicate that fact to her; and (4) evidence indicating that she incurred damage as a result of the failure to disclose that fact to her.
It is well established that a party's silence as to a material fact does not constitute actionable fraud unless the party has a duty to disclose that fact. See State Farm Fire Cas. Co. v. Owen, 729 So.2d 834, 837 (Ala. 1998); Bulger v. StateFarm Mut. Auto. Ins. Co., 658 So.2d 425, 426 (Ala. 1995); Hardyv. Blue Cross Blue Shield of Alabama, 585 So.2d 29, 32 (Ala. 1991). Further, "[t]his Court has often ruled that there is no duty to disclose facts when information is not requested." *Page 1074 Bulger, 658 So.2d at 426 (citations omitted). A duty to disclose may arise either from a confidential relationship between the parties or from the particular circumstances of the case. See Ala. Code 1975, § 6-5-102. The question whether a party had a duty to disclose is a question of law to be determined by the trial court. See Owen, 729 So.2d at 838. In Owen, this Court discussed the function of the trial court in regard to the question whether a party had a duty to disclose:
 "The [trial court] should decide whether, assuming as truth all of the plaintiff's factual assertions, they are sufficient to give rise to a legal duty. If, even presuming that all of the plaintiff's facts are true, the [trial court] determines that, as a matter of law, no duty was owed, then a summary judgment or a directed verdict is appropriate."
Id. at 840.
Barnett does not contend that her relationship with Meriweather, Southern United, or Funding Plus was a confidential relationship.[6] Rather, Barnett argues that under the particular circumstances of this case the defendants had a duty to inform her that her premium payments were not being applied to reinstate the policy and to maintain coverage. In determining whether the defendants had a duty to inform Barnett of that fact, this Court considers the following factors: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." Owen, 729 So.2d at 842-43.
Barnett cites Intercontinental Life Insurance Co. v.Lindblom, 598 So.2d 886 (Ala. 1992) (on remand from the United States Supreme Court), cert. denied, 506 U.S. 869 (1992), andPacific Mutual Life Insurance Co. v. Haslip, 553 So.2d 537 (Ala. 1989), aff'd, 499 U.S. 1 (1991), in support of her argument that by receiving and retaining her premium payments, the defendants assumed a duty to disclose. While these cases do hold that the act of accepting an insured's premium payments constitutes a representation by the insurer that the policy is in full force and effect, see Lindblom, 598 So.2d at 888; Haslip, 553 So.2d at 542; that rule does not apply to the facts of this case. InHaslip, the policy was canceled for nonpayment of premiums, without the insureds' ever being notified. See 553 So.2d at 539. Similarly, in Lindblom, the insured was unaware that her policy had lapsed for nonpayment of premiums. See Intercontinental LifeIns. Co. v. Lindblom, 571 So.2d 1092, 1094-95 (Ala. 1990) (the original appeal, stating the facts of the case). In this case, however, Funding Plus notified Barnett that her policy would be canceled as of September 25, 1995, if it did not receive payment by that date, and Barnett testified that she understood that her policy would be canceled if Funding Plus did not receive her payment by September 25, 1995. Moreover, in both Haslip andLindblom the premium payments were accepted. See Haslip, 553 So.2d at 540; Lindblom, 571 So.2d at 1094. In this case, neither of Barnett's late payments was accepted by Funding Plus. Funding Plus did not cash or deposit Barnett's checks; instead, it returned them to Meriweather. Meriweather did not accept the late payments either. Instead of cashing *Page 1075 
or depositing the checks, Meriweather forwarded them to Barnett.
Barnett argues that the defendants had superior knowledge that her policy had been canceled and that she was uninsured. We do not agree that the relative knowledge of the defendants and Barnett obligated the defendants to communicate to Barnett the fact that her premium payments were not being applied to reinstate and maintain her policy. Assuming as true Barnett's assertion that she did not receive the cancellation notice but received only the notice of intent to cancel, she nevertheless knew that her policy would be canceled if Funding Plus did not receive payment by September 25, and she knew that Funding Plus could not have received payment by that date. Indeed, Barnett had received several such notices in the past. In June 1993, within less than a month of its issuing the first policy to Barnett, Southern United sent her a notice of intent to cancel for nonpayment of the premium, and then, after Barnett failed to pay the premium, Southern United canceled her policy. Moreover, Barnett testified that she had financed insurance coverage before she entered the transaction with Funding Plus; that she was knowledgeable about the procedures of an insurance-premium finance company; and that she knew that she had to make monthly premium payments. Further, assuming that the defendants did have superior knowledge as to the fact that Barnett's policy was canceled, that knowledge must be weighed against Barnett's opportunity to ascertain that her policy had been canceled and that her premium payments were not being applied to reinstate and maintain her policy. See Owen, 729 So.2d at 843. Barnett testified that after she received the notice of intent to cancel her policy, she did not contact Meriweather, Southern United, or Funding Plus. Nor did she contact them after mailing her two premium payments. Thus, we cannot say that Barnett had no opportunity to learn that her policy had been canceled. See id.
Barnett argues that because in the past she paid her premiums after receiving cancellation notices and Southern United on those occasions reinstated her policy, the defendants had a duty on this occasion to inform her that they were not reinstating her policy when they received her late payments. Barnett's argument is misplaced. No evidence in the record indicates that Southern United, Funding Plus, or Meriweather ever accepted a premium payment from Barnett after the effective date of a cancellation notice. In June 1993, when Barnett failed to make her payment by the effective date of the cancellation notice, her policy was canceled. Every other time Southern sent Barnett a notice of intent to cancel her policy, she paid the premium before the effective date of cancellation. Therefore, we conclude that Barnett failed to show any particular circumstance creating an obligation on the part of the defendants to communicate to her on this occasion that her late payments had not been applied to reinstate and maintain her policy.[7]
 IV.
As a matter of law, Meriweather, Southern United, and Funding Plus did not have *Page 1076 
a duty to disclose to Barnett the fact that her post-cancellation payments were not being applied to reinstate and maintain her policy. Because the defendants had no duty to disclose that fact, we need not address the question whether Barnett proved the remaining elements of her fraudulent-suppression claim. The trial court properly entered the summary judgment in favor of Meriweather, Southern United, and Funding Plus.
That judgment is affirmed.
AFFIRMED.
Hooper, C. J., and Maddox, Houston, Cook, Lyons, Brown, and Johnstone, JJ., concur.
[1] When she applied for insurance, Barnett paid Southern United $386 as a down payment toward the semi-annual policy premium of $1,491. After Southern United reviewed Barnett's application and discovered that she had not disclosed prior traffic violations and accidents involving her and her sons, who were also covered under the policy, it increased the policy premium. As a result, Barnett owed an additional down payment of $121.
[2] An "insurance premium finance company" is "[a] person engaged in the business of entering into premium finance agreements." Ala. Code 1975, § 27-40-1(1). A "premium finance agreement" is "[a]n agreement by which an insured . . . promises to pay to a premium finance company the amount . . . to be advanced under the agreement to an insurer . . . in payment of premiums on an insurance contract together with a service charge."Id. § 27-40-1(2).
[3] Paragraph 2 of the finance contract provided in pertinent part:
 "In the event that default be made in payment to [Funding Plus] of any amount due herein that continues for 10 days after the due date, time being of the essence hereof, the full amount then owing hereunder shall become due and payable. Default in any payment or part thereof for a period of 10 days shall be deemed a request for cancellation of the scheduled policies by the insured and for notice of such cancellation to be given by [Funding Plus] to the insurance companies issuing the policies."
[4] Barnett admits that she signed the front of the renewal-quotation agreement. However, in her brief, Barnett states that the insurance-premium finance contract on the back of the quotation is unsigned. A poor photocopy of this form is included in the record, and it appears that the space provided for the insured's signature on the finance contract is blank. However, Barnett testified at her deposition that she chose the financing option. Further, it is undisputed that Barnett and Funding Plus acted in accordance with the terms of the finance contract. Moreover, on appeal, Barnett does not dispute the validity or enforceability of the finance contract.
[5] Barnett testified that she wrote the check on September 25, but incorrectly dated it, and that she deposited the envelope in the mail on that same day.
[6] Southern United and Funding Plus contend that Meriweather was Barnett's agent with respect to the procuring and financing of the insurance policy at issue in this case. Meriweather, however, contends that it played no role whatever in procuring insurance and financing for Barnett, and, thus, did not have a confidential relationship with Barnett during the time she was procuring an insurance policy and financing for the policy. Barnett, on the other hand, contends that Meriweather was Southern United's agent. Barnett notes in her reply brief, in arguendo fashion, only that if Meriweather was her agent then it would have a duty to disclose that would arise as a result of that confidential relationship. Even if Barnett had raised this issue, we would conclude that the evidence in the record would not support a finding of a confidential relationship. See Owen, 729 So.2d at 842 (citingKing v. National Found. Life Ins. Co., 541 So.2d 502, 505-06
(Ala. 1989).
[7] Barnett further argues that Ala. Code 1975, § 27-12-17 and §27-40-12, impose on the defendants a duty to disclose. However, Barnett did not plead or raise this issue in the trial court, and the trial court did not have an opportunity to rule on the issue. On appeal from a summary judgment, this Court cannot hold the trial court in error on the basis of arguments raised for the first time on appeal. See Altiere v. Blue Cross Blue Shield ofAlabama, 551 So.2d 290, 293 (Ala. 1989). Therefore, we cannot consider Barnett's arguments relating to §§ 27-12-17 and 27-40-12.
Moreover, we find no merit to this argument. Section27-12-17(a) provides in pertinent part that "[n]o person shall willfully collect any sum as premium or charge for insurance which insurance is not then provided or is not in due course to be provided." Barnett argues that Southern United and Funding Plus collected premiums from her and that Meriweather, as Southern United's agent, retained those premiums, without providing insurance. This argument likewise is misplaced. With respect to the policy in question, Barnett made no payments to Southern United, and Southern United refunded Barnett's unearned premium within a reasonable time after being requested by Funding Plus to cancel the policy. Funding Plus did not collect any premiums from Barnett after the policy had been canceled. Instead, Funding Plus returned Barnett's checks to Meriweather. Meriweather did not collect any premiums from Barnett after her policy was canceled. It returned the two premium checks to Barnett and sent the refund check to her.
Section 27-40-12(a) provides that upon cancellation of a financed insurance contract, the insurer shall return any unearned premium to the premium finance company, "either directly or via the agent . . . placing the insurance, . . . as soon as reasonably possible, but in any event no later than 30 days after the effective date of cancellation." Southern United returned the unearned premium to Funding Plus within 30 days after the effective date of cancellation. Section 27-40-12 further provides, in subsection (b), that "the [insurance-]premium finance company shall refund the excess [over the amount owed by the insured to the insurance-premium finance company] to the insured or the agent . . . within 30 days after receipt by the premium finance company." Funding Plus refunded the excess to Meriweather within 30 days after receiving from Southern United the check for the refund of the unearned premium.