CRAWLEY, Judge.
In August 1996, Progressive Specialty Insurance Company issued David Back a *93 business automobile policy covering a logging truck. Back made a down payment on the premium and chose to pay the remainder of the premium in 10 monthly installments. Back had misrepresented his driving record; when Progressive learned of the misrepresentation, it increased his premium. Progressive sent Back a premium notice on August 29 for $788.25, which was due on September 8. On September 3, Progressive mailed Back a notice stating that the policy would be cancelled on September 15 unless payment was made by that date. Back paid the premium on September 12, and the policy continued in effect.
On September 13, Progressive sent Back a premium notice for $756.82, which was due on September 28. On September 30, Progressive mailed Back a notice stating that the policy would be cancelled on October 12 if payment was not received by that date. Back paid this premium on October 6. Progressive mailed another premium notice for $730.77 on October 7; it was due October 22. Back did not pay that premium.
On November 3, Progressive mailed the notice for the November premium, which was due November 12. This notice combined the amount due in October and that due in November, for a total premium of $1,461.54. On November 6, Progressive mailed Back a notice stating that the policy would be cancelled on November 18 if the $1,461.54 premium was not paid by that date.
On November 8, Back paid $730.77, which was half the premium due. Back failed to pay the remainder of the premium due by November 18. The policy was cancelled, and, after following certain accounting procedures, Progressive refunded all of the November 12 payment but the $25 required to extend coverage through the entire day of November 18. The truck that had been insured by the policy was destroyed by fire on November 25. Progressive mailed the refund check on November 27.
Back made a claim under the policy. Progressive filed a declaratory-judgment action, seeking a judgment declaring that it did not owe coverage to Back for the loss. Progressive maintained that the policy was effectively cancelled before the loss, but, in a show of good faith, deposited $27,500 with the circuit clerk. First Community Bank (the “Bank”), as holder of a lien on the truck, moved to intervene; its motion was granted. The Bank also asserted a cross-claim against David Back and his wife, Barbara Back, alleging that it was owed moneys as a result of its lien on the truck. Back counterclaimed against Progressive; however, his counterclaim was dismissed because he failed to appear for his deposition. He did not appear at trial.
After a trial, the trial court held that Progressive did not effectively cancel the insurance contract and ordered that the Bank be paid $29,182.45 or the amount on deposit with the circuit clerk. In its judgment, the trial court found that although “the agent told Back that he had to pay the remainder of the premium by November 18, 1996, .... the agent and Progressive had allowed ... Back[ ] to make late payments in prior months ... [and] it was reasonable for ... Back[ ] to assume [he] could make this payment late as well.” The court further found that the premium notice did not indicate that Progressive would not accept partial payments. The trial court based its judgment on the holdings of Intercontinental Life Ins. Co. v. Lindblom, 571 So.2d 1092 (Ala.1990), vacated on other grounds, 499 U.S. 956, 111 S.Ct. 1575, 113 L.Ed.2d 641 (1991), and State Farm Mut. Auto. Ins. Co. v. Anderson, 294 Ala. 451, 318 So.2d 687 *94 (1975). Progressive appeals, arguing that the cases relied upon by the trial court are inapposite. It argues that Barnett v. Funding Plus of America, Inc., 740 So.2d 1069 (Ala.1999), controls and that its cancellation of the policy was effective. After a review of the record and the law applied by the trial court, we reverse its judgment.
The facts are largely undisputed. Back paid only half of the premium due on November 18. The question addressed by the trial court was whether Progressive’s acceptance of the partial payment of the amount due under the November premium notice and the refund of that premium after notice of the loss amounted to a waiver of Progressive’s right to cancel the policy for nonpayment of premiums. That question is one of law. Therefore, the trial court’s judgment on that issue carries no presumption of correctness and we review the application of the law to the facts de novo. Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996).
Although the Bank urges that Lindblom is controlling, the facts of Lindblom differ markedly from those in this case. Ms. Lindblom made the premium payments on a policy insuring the life of Tommie Rodenberry. Lindblom, 571 So.2d at 1094. The premiums had been paid on a quarterly basis. Id. The contract provided that the premium payments were due on the first day of the payment period, but allowed a 31-day grace period. Id. Intercontinental stated that it also allowed an additional 15-day grace period, but that this additional grace period was not provided for in the contract. Id.
In December 1983, Lindblom decided to pay the premiums on a monthly basis instead of on a quarterly basis. Id. She notified Intercontinental of this change, by letter, including with the letter a premium payment for the month of December. Id. The letter and payment were mailed on January 1, 1984. Id. Lindblom stated in the letter that she would send the next premium payment when notified by Intercontinental. Id. Intercontinental did not respond to Lindblom’s letter, but accepted the premium for December. Id.
On February 2, 1984, Lindblom mailed another premium payment. Id. Intercontinental “back-applied” this payment to cover the January 1984 payment, which was 32 days past due. Id. Lindblom continued to make a premium payment each month from February 1984 to August 1985. Id. Intercontinental accepted each payment, but back-applied each payment to make up for the original missed payment in January 1984. Id. Thus, nearly all of Lindblom’s payments were accepted outside the 31-day grace period provided for in the contract. Id.
On August 5, 1985, Lindblom sent a payment to Intercontinental. Id. at 1095. That payment was applied to the unpaid July premium. Id. When Lindblom mailed what she believed was her September payment on September 15, Intercontinental again treated the check as payment of the previous month’s premium. Id. However, Intercontinental’s computer system designated the policy as terminated. Id. Lind-blom, unaware that Intercontinental had determined that the policy had lapsed, remitted what she believed to be her October payment. Id. On October 11, Intercontinental informed her that the policy had lapsed. Id. On October 23, the insured, Ms. Rodenberry, died. Id. When Lind-blom filed a claim under the policy, Intercontinental denied payment of benefits because, it said, the policy had lapsed. Id.
Intercontinental had consistently accepted payments outside its grace period and had failed to notify the insured of the lapse of the policy, which the supreme court determined had actually occurred in January 1984. Id. at 1096. Thus, the supreme *95 court held that “[b]ecause Intercontinental [had] set up a practice whereby it continuously back-applied some 20 or more payments it received outside the 31-day grace period and made no attempt to treat the policy as lapsed, it could not arbitrarily cease this practice and treat the policy as lapsed in August 1985 by claiming that payment was not made within the 31-day grace period.” Id.
The present case is not similar to Lind-blom. Although Progressive accepted payment of several premiums after the due date, it never accepted a premium after the cancellation date. It cancelled the policy as of the effective date provided by the notice furnished to Back after he had failed to pay the entire premium required in the month of November. Back could have paid the remainder of the premium due up to the date of cancellation and thereby continued the policy in effect. He failed to do so.
Unlike Lindblom, Back was not misled into thinking that his payments were current. Instead, he was notified that he was delinquent and that- his October payment was past due. After paying the past-due October payment, he was specifically notified by his agent that the November premium must be paid before November 18 to avoid cancellation. At no time did Progressive mislead Back about his coverage. He did have coverage until November 18; however, when the entire premium due was not paid by that date, Progressive cancelled the policy, in accordance with the notice it had furnished Back.
The Bank also argues that the principles enunciated in State Farm Mutual Auto Insurance Co. v. Anderson govern this case. In Anderson, the plaintiff, Anderson, failed to timely pay his premium payment on his automobile insurance policy, which was to expire on October 10, 1973. Anderson, 294 Ala. at 451, 318 So.2d at 688. Instead, Anderson sent State Farm a check dated October 29. Id. The envelope containing the premium payment was postmarked November 2, and the payment was received by State Farm on November 3. Id. On the evening of November 1, Anderson was involved in a automobile accident. Id. State Farm was timely notified of the accident, and it deposited Anderson’s check on November 7. Id. State Farm retained the past-due premium and issued Anderson a new policy effective from November 3. Id. When Anderson was sued, State Farm filed a declaratory-judgment action raising the question whether it had a duty to defend him. Id.
The trial court determined that State Farm had waived its right to deny coverage, by accepting Anderson’s late payment with knowledge of the loss. Anderson, 294 Ala. at 453, 318 So.2d at 689. In support of its affirmance of the trial court’s judgment, the supreme court quoted several cases holding that an insurer’s acceptance of a “ ‘past-due premium payment, with knowledge that a loss was sustained during the defaulting period, constitute^] a waiver’ ” of the insurer’s right to deny coverage. Anderson, 294 Ala. at 454, 318 So.2d at 690 (quoting Mutual Sav. Life Ins. Co. v. Noah, 291 Ala. 444, 282 So.2d 271 (1973)). Although State Farm admitted that it had deposited Anderson’s check with knowledge of the loss, it disputed the date that the premium payment was mailed, arguing that it was mailed after the November 1 accident. Anderson, 294 Ala. at 451, 318 So.2d at 688. The supreme court stated that the ease presented a close question because some inferences from the facts favored State Farm, while some inferences favored Anderson. Anderson, 294 Ala. at 454, 318 So.2d at 690. Thus, the court concluded that the trial court’s judgment must be affirmed *96 because it was based on ore tenus evidence. Id.
The situation in the present case is also unlike that presented in Anderson. Unlike State Farm, Progressive refunded the partial premium paid by Back, less the $25 amount required to extend coverage through November 18. Although the actual refund was not accomplished before Progressive was notified of the loss, it had cancelled Back’s insurance on November 18, before the loss occurred.
Although Barnett v. Funding Plus of America, Inc., 740 So.2d 1069 (Ala.1999), involved the actions of a premium finance company in cancelling an insurance contract and was an appeal from a summary judgment on a fraudulent-suppression claim, Progressive argues that it is more applicable to the present case than Lind-blom or Anderson. Barnett had contracted with Southern United Fire Insurance Company for automobile insurance. Barnett, 740 So.2d at 1070. She chose to finance her premium; she made a down payment and was to pay nine monthly installments. Id. at 1071. Funding Plus was the finance company that financed Barnett’s premium. Id. It was given power of attorney to cancel the policy for nonpayment. Id.
Under the finance agreement with Funding Plus, Barnett’s payments were due by the 10th of each month. Id. Barnett failed to make her eighth installment payment by its due date of September 10. Id. On September 15, Funding Plus notified her of its intent to cancel the policy for nonpayment if it did not receive her payment within 10 days. Id. Barnett did not remit her payment by September 25, the tenth day after the notice. Id.
When it did not receive Barnett’s payment, Funding Plus mailed a notice to Southern United requesting that Barnett’s policy be cancelled as of September 25. Id. After the date of cancellation, Barnett mailed Funding Plus a check for the overdue premium. Id. at 1072. The check was dated September 27, and the envelope was postmarked September 28. Id. Funding Plus did not cash the check, but instead sent the check to the local insurance agency to be returned to Barnett. Id. Barnett also paid her ninth installment. Id. Funding Plus did not cash that check either, but again forwarded it to the local insurance company to be returned to Barnett. Id.
Barnett argued that by receiving and retaining her payments, Funding Plus had assumed a duty to disclose that her payments were not being used to maintain her policy, citing Lindblom as support for her argument. Id. at 1073. The supreme court stated that Lindblom did stand for the proposition that “the act of accepting an insured’s premium payments constitutes a representation by the insurer that the policy is in full force and effect.” Id. However, it found that the rule did not apply to Barnett’s case. Id. at 1074. The court distinguished Lindblom by stating that Lindblom never knew the policy had lapsed, while Barnett had been notified that her policy would lapse if payment was not received by September 25. Id.
Like Barnett, Back was notified that his policy would be cancelled if he did not pay the premium due; he was to pay $1,461.54 by November 18. Even after he paid half of the premium to his agent on November 12, he was reminded by letter that the remainder of the premium, $730.77, was due before November 18. Although Progressive did cash Back’s November 12 premium check, it did so because, at that time, Back still had time to pay the remainder of the premium due. Once Progressive learned that Back had not paid the remaining premium, it waited to make certain that the check had cleared the bank and then deducted the $25 of premium owed by *97 Back before issuing a refund check. This factual distinction is not sufficient to make this case different from Barnett Progressive still returned Back’s premium and at all times acted in a manner consistent with its intention to cancel the policy for nonpayment of premiums as of November 18.
Although the trial court’s finding that the premium notice did not indicate that Progressive would not accept partial payments is supported by a review of the notices appearing in the record, we do not see how that fact affects Progressive’s right to cancel Back’s policy for nonpayment of premiums. Larry Lackey, Progressive’s state litigation manager, testified that Progressive and its agents would accept a partial payment of a premium and that some insureds made several payments before the cancellation date to pay a premium instead of writing only one check. However, the letter to Back from his agent, appearing in the record, states clearly that the remainder of the premium stated in the November premium notice was due by November 18. After reviewing the testimony and the documentary evidence, we cannot conclude, as the trial court apparently did, that acceptance of the partial payment altered the requirement that the entire amount shown in the “amount due” portion of the premium notice be paid before the cancellation date to avoid cancellation.
In light of our consideration of the evidence presented and our review of the law, we conclude that the trial court erred by entering the judgment for the Bank. Progressive cancelled Back’s policy as of November 18 for nonpayment of premiums. Progressive’s actions did not amount to a retention of Back’s premium, see State Farm Mut. Auto. Ins. Co. v. Anderson, 294 Ala. 451, 318 So.2d 687 (1975), and did not mislead Back about the status of his policy, see Intercontinental Life Ins. Co. v. Lindblom, 571 So.2d 1092 (Ala.1990). In light of our reversal of the trial court’s judgment, we pretermit any discussion of Progressive’s argument that the trial court’s award of “$29,182.45 or the amount paid by Progressive to the Clerk” was not supported by the evidence.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and MONROE, JJ., concur in the result.